IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37754

| TERRY LEE KERR, | ) | 2011 Unpublished Opinion No. 719 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: November 22, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BANK OF AMERICA, IDAHO, N.A., | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

Order granting partial dismissal; orders granting partial summary judgment; order denying motions for sanctions and/or cease and desist orders; order denying motion for change of venue; and order granting motion to extend mediation, affirmed.

Terry Lee Kerr, Idaho Falls, pro se appellant.

Hawley Troxell Ennis & Hawley LLP; Michelle R. Points, Boise, for respondent.

_____

GUTIERREZ, Judge

Terry Lee Kerr appeals the district court's order granting dismissal of two claims in his complaint and orders granting summary judgment as to the other claims in his complaint. Kerr also appeals the district court's denial of his numerous motions for sanctions and/or cease and desist orders, denial of his motion for a change of venue, and granting of the motion to extend mediation. For the reasons set forth below, we affirm.

## I.

## BACKGROUND AND PROCEDURE

Kerr filed a complaint against Bank of America Idaho, N.A. ("Bank of America"), alleging several different "Claims for Relief" as follows:

1.       violation of the privacy act;

1

2.      civil conspiracy;[1]

3.      conversion, embezzlement, and fraud;

4.      breach of contract;

5.      bad faith;

6.      breach of implied covenant, violation of the Consumer Protection Act, and intentional infliction of financial distress;

7.      defamation;

8.      interference with prospective economic advantage; and

10.[2]   intentional infliction of emotional distress.

Along with its answer, Bank of America filed a motion to dismiss, based on Idaho Rule of Civil Procedure 12(b)(6) affirmative defense for failure to state a claim, as to the fifth, seventh, eighth, and tenth claims. Bank of America simultaneously filed an Idaho Rule of Civil Procedure 56(c) motion for summary judgment as to the first, second, third, fourth, and sixth claims.

In considering the two motions and accompanying memorandums of support, the court addressed each claim individually. First, it addressed the claims subject to the motion to dismiss. The district court found the fifth claim of bad faith and the tenth claim of intentional infliction of emotional distress appropriate for dismissal under Idaho Rule of Civil Procedure 12(b)(6). Construing all facts in favor of Kerr, the district court found Kerr adequately stated his seventh claim of defamation because he asserted Bank of America told other financial institutions to avoid dealing with him due to excessive fees and overdrafts on his account. Concluding that damage to Kerr's reputation and harassment was sufficient to allege harm, the trial court denied the motion to dismiss this claim. In considering the claim of interference with a prospective economic advantage, the eighth claim, the district court treated the motion to dismiss as a motion for summary judgment because evidence and affidavits outside of the pleadings were presented to the court for consideration of that claim.

In its examination of the claims subject to the motion for summary judgment, the court granted the motion as to all claims: the first, second, third, fourth, sixth, and eighth. Generally,

---

[1]     As presented in the complaint, the "Second Claim for Relief" is not clear, but as the district court and the Bank of America did, we will assume it alleges civil conspiracy.

[2]     There was no "Ninth Claim for Relief" in the complaint Kerr filed with the court.

2

this conclusion was predicated on the fact Kerr was unable to or did not cite a statutory or other legal basis for these claims.

Because the claim of defamation survived the first motions, the case proceeded to discovery. The case was also set for mediation; however, discovery and other proceedings were not stayed pending the outcome of mediation. After conducting more of its own investigation, Bank of America filed another motion for summary judgment as to the defamation claim and asked the court to postpone mediation. The district court granted the extension for mediation and held a hearing on the second summary judgment motion. The evidence on the motion presented to the court showed Bank of America was unable to confirm any contacts between its agents and any other financial institutions regarding Kerr's personal information or account history. Without evidence of any statement made by Bank of America to another person, Kerr could not sustain a defamation claim. After oral argument from both parties, the district court granted the second motion for summary judgment.

From the time the complaint was filed up until the hearing on the second motion for summary judgment, Kerr also made several other motions: eleven motions for sanctions and/or cease and desist orders; one motion for a change of venue; one motion to compel discovery; and one motion to amend his complaint.[3] The motions for sanctions and/or cease and desist orders mainly consisted of allegations that the Bank of America lawyers were orchestrating and participating in a large civil conspiracy to harass, harm, defame, and smear Kerr and his family. The allegations ranged in scope and subject from paying police to alter an infraction Kerr incurred to a misdemeanor, to paying school children to threaten Kerr's son, to extinguishing a possible loan modification on a home Kerr allegedly owned. The district court heard argument on these numerous motions at the hearing on the second motion for summary judgment and denied all of the motions in one order.

The motion for a change of venue was precipitated by Kerr's assertions that the civil conspiracy in which Bank of America and its lawyers were involved was so extensive he would be unable to receive a fair trial in Bonneville County. The district court found no evidence attributing the allegations to the bank and held that generalized complaints about the community failed to show how a fair trial would not be available. Thus, the district court denied the motion

---

[3] Kerr also made a motion to vacate the initial motion to dismiss. This was addressed in the district court's first decision and order.

for change of venue. The motion to compel discovery was not set for hearing until after the hearing on the second motion for summary judgment and became moot after the district court granted judgment for Bank of America. Finally, the motion to amend the complaint was not noticed for hearing and the court did not consider it.

After judgment was entered for Bank of America, Kerr timely filed an appeal. Because Kerr appeals substantially all prior dealings with the trial court, we will review each decision by the district court in turn.

## II.

## DISCUSSION

### A. Order Granting the Motion to Dismiss Kerr's Fifth and Tenth Claims

#### 1. Standard of review

Review of a district court's dismissal of a complaint under Idaho Rule of Civil Procedure 12(b)(6) is de novo. *Taylor v. McNichols*, 149 Idaho 826, 832, 243 P.3d 642, 648 (2010). As an appellate court, we will affirm a trial court's grant of a Rule 12(b)(6) motion where the record demonstrates that there are no genuine issues of material fact and the case can be decided as a matter of law. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). When reviewing an order of the district court dismissing a case pursuant to Rule 12(b)(6), the nonmoving party is entitled to have all inferences from the pleadings viewed in its favor, and only then may the question be asked whether a claim for relief has been stated. *Id.* The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims in the pleadings. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). All factual allegations will be considered true, unless they are purely conclusory. *Orrock v. Appleton*, 147 Idaho 613, 618, 213 P.3d 398, 403 (2009). Where all factual allegations in the pleadings, if true, still fail to meet the elements of a claim showing a plaintiff is entitled to relief, dismissal is appropriate. *See id.* We review the district court's grant of dismissal under Rule 12(b)(6) as to Kerr's fifth and tenth claims, bad faith and intentional infliction of emotional distress, respectively.

#### 2. Bad faith

Kerr asserts Bank of America employees failed to post credits and placed cash holds on Kerr's checking account in bad faith, causing him to overdraw his account. Additionally, other checks and debits came through with resulting overdraft bank fees. Because all banking

4

contracts contain an implied covenant of good faith and fair dealing, Kerr asserts he is entitled to both contract and tort damages.

A claim of bad faith can be initiated as an independent tort claim or as a breach of the covenant of good faith and fair dealing in a contract. *See White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 100, 730 P.2d 1014, 1020 (1986). However, the claim in tort is limited in Idaho to the insurance context. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 275-76, 824 P.2d 841, 850-51 (1991). Therefore, we address only whether Kerr states a claim sounding in contract.

A duty of good faith and fair dealing is implied in any contract. *Indep. Sch. Dist. of Boise City v. Harris Family Ltd. P'ship*, 150 Idaho 583, 589, 249 P.3d 382, 388 (2011). Whether the covenant of a contract has been breached is an objective determination of whether the parties have acted in good faith in terms of enforcing contractual provisions. *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 891, 243 P.3d 1069, 1079 (2010). "The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement, and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000). However, it only arises in connection to the terms of the agreement. *Wesco*, 149 Idaho at 892, 243 P.3d at 1080; *Taylor v. Browning*, 129 Idaho 483, 491, 927 P.2d 873, 881 (1996).

In order to establish a claim for relief in the pleadings, Kerr needed to recite at least some terms of an agreement and allege what conduct by Bank of America violated the benefits of the agreement. Without any provisions of the banking contract, or even allegations of what such terms were, the pleadings failed to establish how the assessment of bank fees or holds on the account were done in bad faith. Based on the pleadings, dismissal of the claim of bad faith was not in error.

### 3. Intentional infliction of emotional distress

Kerr claims intentional infliction of emotional distress for the harms suffered by Kerr and his family. His allegations in the complaint include: Bank of America paying individuals to purposefully extract more money from Kerr through illegal bank fees and holds on his account; bank employees giving out Kerr's personal information; persons illegally purchasing confidential information regarding Kerr and his son; and a mortgage holder's illegal trustee sale of Kerr's home. Kerr asserts all of these abuses were done through an intentional scheme by Bank of

America: "A very stressfull [sic] time created by the bankers at BofA. This purposely done plot to cause finacial [sic] grief shows the very real need for a [sic] exorcist to visit the BofA. . . ."

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove that: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe. *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 446, 235 P.3d 387, 396 (2010). Exercising a legal right, in and of itself, is not, however, considered extreme and outrageous conduct even if it is certain to cause emotional distress, unless the way it is exercised is extreme or outrageous. *Id*. at 446-47, 235 P.3d at 396-97. Further, there may only be liability for this tort where the emotional distress is sufficiently severe, such as where the plaintiff incurred physical damage or was hampered in the performance of daily functions. *Alderson v. Bonner*, 142 Idaho 733, 741, 132 P.3d 1261, 1269 (Ct. App. 2006). A showing of severe emotional distress does not require injury or a physical manifestation resulting from emotional turmoil, but must be more than generalized fear, stress, or worry, which by itself does not establish the necessary severity. *See id.* at 741-42, 132 P.3d at 1269-70.

There are at least three deficiencies in Kerr's pleadings. First, though Kerr alleges that the overdrafts, fees, and holds caused him distress and were done intentionally and maliciously, he does not allege how such actions were outside of Bank of America's legal rights under contract or what made such fees extreme and outrageous. *See* discussion *supra* Part II.A.2. Second, though we may assume, for the sake of argument, that many of the other events causing Kerr distress are extreme and outrageous, they do not point to *conduct by* the Bank of America. Instead, Kerr makes conclusory statements about Bank of America's intentional plot. A legal conclusion that there existed intent does not replace the necessity for indispensable facts which support such a conclusion in a claim for relief. *See Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 136-37, 106 P.3d 455, 462-63 (2005). Without alleging facts supporting a causal connection between wrongful conduct by Bank of America and the distress Kerr endured, Kerr cannot establish a claim for relief. Finally, nothing in the complaint alleges the emotional distress Kerr endured was severe. At most, he states, "having to wonder what dirty chicken[] thing they will do next is very distressfull [sic]. . . . Then fighting them for months to get the fees reversed is a very finaancial [sic] problem, and very emotional problem." These statements do

not allege any specific emotional problems resulting from the actions taken upon Kerr and without more, do not establish the required severity to sustain the tort. The district court did not err in dismissing this claim.

**B.     Motions for Summary Judgment**

We now consider the two motions for summary judgment and whether Bank of America was entitled to judgment as a matter of law.

**1.     Standard of review**

Summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when the pleadings, affidavits, and other evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). However, the court will not consider statements that are conclusory and do not provide specific, admissible fact either supporting or preventing the entry of summary judgment, as they do not satisfy either the requirement of admissibility or competency under Rule 56(e). *Hecla Mining Co. v. Star-Morning Mining Co.*, 122 Idaho 778, 786, 839 P.2d 1192, 1200 (1992).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, through further

depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under Rule 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to Idaho Rule of Civil Procedure 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

2. **First motion for summary judgment**

a. **Violation of the privacy act**

Kerr, in his first claim, asserts that Bank of America, through its agents, violated the privacy act by giving out his personal information. As the district court found, Kerr fails to identify the actual privacy act to which he refers. The only act called "The Privacy Act" is federal in nature. *See* 5 U.S.C. § 552a. Individuals with claims under that act can only bring suit against a federal agency and not against private banks. 5 U.S.C. § 552a(g)(1).

Additionally, there are several dozen statutory references in Idaho alone which involve an individual's privacy. It is true that our pleading standards only require a plaintiff to make a short, plain statement that sufficiently puts the adverse party on notice of the claims brought against it. I.R.C.P. 8(a)(1); *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010). However, even under this liberal standard, simply stating that Bank of America violated the privacy act, without more, does not narrow the possibility of a violation to any one or even a few of those several statutes. It provides no notice of the claims under Idaho law that Bank of America would be subject to or the defenses available to it. Without the ability to construe from

8

the complaint or other evidence a particular statutory basis, Kerr fails to establish a claim entitling him to relief. Thus, the district court properly granted summary judgment as to this claim.

### b. Civil conspiracy

Kerr argues that Bank of America conspired with numerous individuals in the City of Idaho Falls and the Bonneville County region for the unlawful objective of harassing, harming, framing, and smearing Kerr, his family, and his friends. The allegations of conspiracy orchestrated by the Bank of America extend to numerous participants including local law enforcement, district schools, church officials, restaurant owners, district attorneys, credit reporting agencies, and the postal service. An illustrative example is provided:

> Example I went out on the Fourth of July after the fireworks that night with my son to set off some fireworks. The neighbor Jexx saw us and imeadiatly [sic] went in to the house and called Connie Hutc Hutchins, a minute later her bedroom light came on and she was on the computer sending the incident to the law emforcement [sic] who are compiling everything she reports. She also was behind the incident at the boyscoucts [sic] car race at the Morman [sic] church, they had 3 girls corrner [sic] my 3rd grade son and tell him they were going to bloody his nose just like they bloodied my nose at church. He pushed his way out and came to me. This guy from the county attorneys [sic] office came and yelled at my son for pushing a girl in front of the Mormans [sic], a 300 pound young guy about 6 feet 5 was setting [sic] by me in case a call to shut up camme [sic] from me. My son has been beaten up and poked with a chopstick in the eyes and the Mormans [sic] get paid to due [sic] this, and the principle does also, so there is never a duty aid on duty to see the planned beating. All paid for by the Bank of America.

"A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *Wesco*, 149 Idaho at 898, 243 P.3d at 1086 (quoting *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003)). The essence of a civil conspiracy claim is the wrong committed as the objective or purpose of the conspiracy, not the existence of the conspiracy itself. *Wesco*, 149 Idaho at 898, 243 P.3d at 1086. However, in order to establish such a claim, there must be "specific evidence of a plan or agreement to demonstrate the existence of the conspiracy at the time the allegedly unlawful objective was accomplished." *Id*.

To avoid summary judgment, Kerr needed to show specific evidence of a plan or agreement between Bank of America, or its agents, and the perpetrators of the numerous wrongs

Kerr alleges he suffered. Bank of America met its burden for summary judgment by demonstrating that the record is devoid of any such evidence. In response, Kerr states in one of his motions for sanctions, "I can prove existence of a formal agreement and a conspiracy agreement that may be inferred from the acts of [sic] parties involved." However, he goes on to recite acts by unrelated individuals--including his neighbors, church members, and even police officers in Idaho Falls. Though Kerr alleges some of these wrongdoers told him that Bank of America's attorney had contacted them, Kerr does not support such claims with anything other than inadmissible hearsay.

Kerr also stated in his complaint, "BofA payed [sic] people to send them information to cause us finacial [sic] and emotional grief. A very illegal existence proof of a formal agreement that can be inferred as an act of a criminal conspiracy done by the BofA. The useing [sic] of unlawfull [sic] means to accomplish a lawfull [sic] purpose." He presumes "[t]he Bank of America paid everyone to due [sic] the plaintiff harm or financially destroy the plaintiff" and that "paying people to harm [Kerr's] family is fact." Such statements, however, are conclusory and show no evidence of actual personal knowledge that Bank of America was connected to the schemes and nothing specific from anyone else to support Kerr's speculations. In other court filings, Kerr talks of a "mole" who can verify connections between Bank of America and several other individuals named in Kerr's filings, but Kerr has not provided an affidavit from this person, or even disclosed the identity of this person.

Without producing admissible evidence of an agreement, none of Kerr's allegations of harm, harassment, and smearing can be traced or attributed to Bank of America, and Kerr did not meet his burden to show there is a genuine issue for trial. The district court did not err in granting summary judgment on this claim.

### c.      Embezzlement, conversion, and fraud

Related to both his breach of contract and civil conspiracy claims, Kerr alleges embezzlement, conversion, and fraud by Bank of America and its agents:

> In April of 2009, and in May of 2009,[4] the BofA did [two] holds on my
> cash deposits. . . . A banker woman named Liz did this. She again did the hold

---

[4]      There is a discrepancy in the record as to whether Kerr even had an open account with the Bank of America branch in Idaho Falls in 2009. Bank of America provided evidence that Kerr had a checking account with the bank only from November 2006 to November 2007. Even disregarding the discrepancies, however, Kerr fails to state a claim in his account of the facts.

on my cash deposit in May 20, 2009, but this time the banker would not reverse or put the cash deposit in. It was in my account when I lefted [sic] on the 20th and the Liz gal had a big smile and looked like she was high on drugs. How much is BofA paying these people to purposely screw me? Another time the Liz banker did short me 100 dollars on cashing a check. Everyone [sic] of the bankers in the BofA did short me. They shorted me from 5 dollars to 100 dollars. Every time I get money from this bank it is always short, they always say it has been a long day, and I say how many tips did you get today? Stealing customers [sic] money is their tips.

Kerr also alleges there was a deposit on his account which was not posted, resulting in fees accrued to his account.

Embezzlement is a criminal offense, Idaho Code § 18-2403, and there is no civil tort of embezzlement. Rather, a civil litigant must bring an action in conversion or trespass to chattels. *See generally* AMERICAN LAW INSTITUTE, RESTATEMENT OF THE LAW (SECOND), TORTS 2d, Div. 1, Chpt. 9 (1995). The district court properly dismissed this claim.

Conversion is an act of dominion wrongfully asserted over another's personal property, which is inconsistent with or denies the owner's rights therein. *Taylor*, 149 Idaho at 846, 243 P.3d at 662. To have a conversion claim, a plaintiff must prove three elements: (1) the defendant wrongfully gained dominion; (2) the plaintiff owned or possessed the property at the time; and (3) the property is personal property. *Id.* Of note, where the property in the conversion claim is money, the claim cannot be sustained unless the money can be described or identified as a specific chattel. *Id.*; *Warm Springs Properties, Inc. v. Andora Villa, Inc.*, 96 Idaho 270, 272, 526 P.2d 1106, 1108 (1974); *see also High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) ("[I]f the alleged converted money is incapable of being described or identified . . . as a specific chattel, it is not the proper subject of a conversion action."). In other words, failure to describe money as a specific chattel means a plaintiff cannot establish the third element of the claim and dismissal is appropriate.

Kerr claims conversion by Bank of America of held or non-posted deposits. We find that, without more, nothing in Kerr's complaint suggests the sums could be described or identified as a specific chattel and the claim could be dismissed on this finding alone. Even if

Kerr also had a checking account with Bank of America in Nevada, but, as Bank of America does, we believe the allegations do not appear to be in regards to that account.

Kerr's deposits and withdrawals of cash were considered personal property, he fails to meet the first element--that Bank of America wrongly gained dominion over the property. From Kerr's argument, we can infer the holds dispossessed him of control and use of the property. While dispossession can amount to conversion because it interferes with the right to control the property, it still needs to be shown that dispossession was without privilege, either given though consent (the banking contract) or by law. As with the claim of intentional infliction of emotional distress, without Kerr providing the banking contract provisions or allegations of what that agreement entailed, this Court is unable to infer such holds were without privilege. To the contrary, the trial court, through the affidavit of a bank employee, had evidence that there are a number of reasons the bank can place a hold on a deposit and nothing to show the holds were not done in accordance therewith. As such, the district court did not err in dismissing the claim.

As the trial court stated, the non-posted credit is not at issue because the deposit was eventually credited to Kerr's account and the ensuing fees were credited back to Kerr's account. Thus, there are no damages. Similarly, there is nothing in the record which supports an inference that Kerr incurred damages due to the shortages on the deposits. In his statement, noted above, Kerr suggests he discovered upon receipt that the deposits were short and addressed each situation as it arose.

Lastly, a claim of fraud must be plead with particularity. I.R.C.P. 9(b). To sustain a cause of action, a plaintiff must prove: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury. *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006). To prevail in summary judgment, the plaintiff needs to present sufficient evidence to create a material issue of fact as to each element. *Id.*

Kerr alleges nowhere in his complaint or other evidence that the Bank of America, or its agents, made any material statement of fact directed at Kerr. Kerr asserts there were statements made to him regarding the mistaken holds on deposits or excuses for such mistakes, but nothing which shows materiality or falsity. Kerr does not make any assertions as to his right to rely or his actual reliance on any such statements or any injury suffered as a result. In sum, the district court did not err in finding Kerr failed to state the circumstances of fraud with particularity and

12

summary judgment was appropriately granted as to the claims of embezzlement, conversion, and fraud.

### d. Breach of contract

Kerr argues Bank of America violated the contract he and the bank entered into upon opening the checking account by assessing overdraft fees, taking fees for non-posted credits, placing two holds on his cash deposits, and losing deposits altogether. These alleged breaches, Kerr contends, resulted in the wrongful assessment of hundreds of dollars of fees.

The burden of proof for showing a breach of contract rests on the plaintiff. *O'Connor v. Harger Const., Inc.*, 145 Idaho 904, 910, 188 P.3d 846, 852 (2008). If that burden is met and the defendant replies with and supports an affirmative defense, the plaintiff has the additional burden of disproving that affirmative defense. *Id.*

As previously discussed, Kerr did not meet his burden to show that actions by Bank of America were outside of its contractual rights. *See supra* Parts II.A.2 & II.B.2.c. From the record and evidence provided by Bank of America, the fees appear to be in accordance with the contract provisions regarding overdrafts. Additionally, the banking contract provides there may be up to a six-day waiting period before certain deposits are available to the account holder, depending on the type of check deposited. Kerr provided nothing to the district court disproving that such holds were within Bank of America's contractual rights. As for the non-posted credits and the lost deposit, even if such actions could be characterized as a breach of contract, by Kerr's own statements he fails to show any damages, as both instances were remedied when brought to the attention of the bank. Kerr failed to show any genuine issue of material fact and summary judgment was proper as to the breach of contract claim.

### e. Breach of implied covenant, violation of the Consumer Protection Act, and intentional infliction of financial distress

In arguing the breach of implied covenant, Kerr alleges the conduct in the breach of contract claim also supports the claim of bad faith. The law regarding a breach of the implied covenant of good faith and fair dealing was previously discussed, as was Kerr's inability to survive a Rule 12(b)(6) motion to dismiss. *See* discussion *supra* Part II.A.2. However, in deciding a motion for summary judgment the court may consider evidence outside of the pleadings.

13

In Kerr's complaint he alleges, "They never tell you that the deposit is on hold and you find out when they charge you fees." He further states:

> It took weeks to get my money back and the fees they charged for not properly puting [sic] my money [into] my account. These non posted credits, holds on cash deposits were never told to the plaintiff just so there could be charges put on the account when the taking out of account happened cause [sic] the plaintiff never knew the deposits were not properly credited to the account.

Additionally, Kerr notes, "The BofA does not refund the fees if it is not a bank error."

Exhibits presented by Bank of America verify that it was Bank of America's policy to notify an account holder when there was a hold on a deposit, as stated in the Deposit and Disclosure Agreement:

> If we are not going to make all of the funds from your deposit available by the first business day after the day of your deposit, we generally notify you at the time you make your deposit. We also tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we mail you the notice by the next business day after we receive your deposit.

While the contract provisions exclude notification by mail for certain types of deposits, the agreement goes on to say:

> In addition, we may delay the availability of funds you deposit by check for a longer period under the following circumstances:
> - We believe a check you deposit will not be paid.
> - You deposit checks totaling more than $5,000 on any one day.
> - You redeposit a check that has been returned unpaid.
> - You have overdrawn your account repeatedly in the last six months.
> - There is an emergency, such as failure of communications or computer equipment.
>
> We will notify you [if] we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available.

We have no information in the record as to what type of deposits Kerr made and whether they were subject to the provision excluding notification by mail or fell within the circumstances causing a delay in funds and, therefore, cannot find an express breach of the contract. Nonetheless, an express breach need not be alleged to assert a breach of the implied covenant in a contract, *see Ferguson v. City of Orofino*, 131 Idaho 190, 193-94, 953 P.2d 630, 633-34 (Ct. App. 1998), and based on the provisions in the agreement, it is alleged that Bank of America had

a duty to, in good faith, follow its policy to "generally notify" a bank customer of holds on a deposit at the time it is made. Taking Kerr's factual allegations as true that no notice was ever given, Bank of America may have significantly impaired his benefit under the contract to avoid overdraft fees by prior notice of holds on deposits and thus, could imply a breach of the implied covenant of good faith and fair dealing. Whether a party breached the implied covenant of good faith and fair dealing is a question of fact, *George v. Univ. of Idaho*, 121 Idaho 30, 37, 822 P.2d 549, 556 (Ct. App. 1991), and a question of fact for the jury survives summary judgment. *See Steiner v. Ziegler-Tamura Ltd., Co.*, 138 Idaho 238, 242-43, 61 P.3d 595, 599-600 (2002).

Without taking into account other evidence presented, the district court stated, "Assuming, as Defendants do, that Plaintiff is referring to the implied covenant of good faith and fair dealing, that claim was dismissed above in dealing with Plaintiff's fifth cause of action." However, dismissal cannot be upheld under a motion for summary judgment solely based on the pleadings when other evidence has been presented. Nonetheless, we exercise free review, and in looking at the record, find Kerr failed to establish damages from a breach of the implied covenant of good faith and fair dealing.

The Idaho Supreme Court has answered whether a plaintiff can recover damages for a breach of the covenant:

> A violation of the implied covenant is a breach of the contract. It does not result in a cause of action separate from the breach of contract claims, nor does it result in separate contract damages unless such damages specifically relate to the breach of the good faith covenant. To hold otherwise would result in a duplication of damages awarded for breach of the same contract. As in other contract cases, a claimant may be entitled to consequential damages for breach of the implied covenant of good faith if "there is something in that contract that suggests that they were within the contemplation of the parties and are proved with reasonable certainty."

*Idaho First Nat'l Bank*, 121 Idaho at 289, 824 P.2d at 864 (quoting *Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho*, 115 Idaho 56, 61, 764 P.2d 423, 428 (1988)).

In discussing the assessment of fees, Kerr stated he "called the 800 [customer service] number back, and they did reverse the fees from the back [sic], the overdraft charges and check fees for the insufficient [sic] checks. Then the 800 number had me send in the check fees from the people I wrote the checks to and they did pay them also . . . ." Thus, Kerr, by his own admissions, fails to show any actual damages from the fee assessments. Additionally, we find no

15

provision in the contract, as provided in evidence, where the contract contemplates liability on behalf of the bank for consequential damages resulting from breach of the implied covenant. Consequently, there is no genuine issue of fact for trial, and Bank of America is entitled to summary judgment as a matter of law.

As the district court did, we assume the next portion of the sixth claim for relief asserts a violation of the Idaho Consumer Protection Act (ICPA). I.C. § 48-601, et seq. The ICPA allows recovery for an aggrieved party in a contract where the defendant has engaged in certain specific prohibited actions that are deemed to be unfair or deceptive. *See* I.C. § 48-603; *Taylor*, 149 Idaho at 846, 243 P.3d at 662. Though Kerr's complaint alleges numerous wrongdoings by Bank of America, it does not allege the specifically prohibited unfair or deceptive practices outlined in the ICPA that Bank of America was to have engaged in. Even assuming all facts pled by Kerr to be true, he has failed to sustain a claim under the ICPA and summary judgment was proper.

Lastly, there is no independent tort of intentional infliction of financial distress. Even if we were to look at Kerr's allegation as an action in negligence, as a general rule, a plaintiff is prohibited from recovery in tort for purely economic losses absent an accompanying physical injury to persons or property, unique circumstances, or a special relationship. *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 1007-08, 895 P.2d 1195, 1200-01 (1995). Kerr has not alleged physical or property damage which can be attributed to Bank of America and the circumstance with the bank's assessment of fees is not unique. Further, though declining to actually decide the question, we have serious doubts as to whether a bank and its client presents a "special relationship"[5] and Kerr does not allege such a relationship existed. Summary judgment on the claim was appropriate.

### f. Interference with a prospective economic advantage

Kerr argues that Bank of America interfered with a prospective economic advantage by intercepting and stealing information intended for Countrywide, a mortgage company now owned by Bank of America. He claims the information was used to initiate an unlawful trustee

---

[5] A special relationship exists between a plaintiff and defendant where the defendant holds himself out to the public as having expertise regarding a specialized function which induces a plaintiff's reliance on that superior knowledge. *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 1008, 895 P.2d 1195, 1201 (1995).

sale on a home owned by him and his son, resulting in the loss of rental income and $100,000 in equity.

There are five elements to a claim of interference with a prospective economic advantage: (1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself; and (5) resulting damage to the plaintiff whose expectancy has been disrupted. *Wesco*, 149 Idaho at 893, 243 P.3d at 1081. Each element needs to be established in order to recover from a defendant.

Kerr fails to establish the first element. Assuming Kerr owned the house previously titled in his son's name,[6] the record shows that rental payments had ceased at some time prior to the mortgage default. In fact, through the uncontradicted affidavit of Kerr's son,[7] evidence establishes that lack of rents was the reason for the default on the mortgage rather than a result of the intended foreclosure. Therefore, Kerr had no valid economic expectancy with which Bank of America could interfere. Additionally, even if Bank of America wrongly initiated the trustee sale on the home, the sale was aborted. Nothing in the record indicates Kerr lost equity or value as a direct result of the aborted sale, and by Kerr's own words, he continues to own the home. Consequently, Kerr has no legal basis for a claim against Bank of America for interference with a prospective economic advantage. Bank of America was entitled to judgment as a matter of law.

### 3. Second motion for summary judgment

After some discovery and investigation, Bank of America filed a second motion for summary judgment as to Kerr's seventh claim, defamation. To sustain a cause of action for defamation, Kerr needed to show that: (1) Bank of America communicated information concerning Kerr to others; (2) the information was defamatory; and (3) Kerr was damaged because of the communication. *Clark v. Spokesman-Review*, 144 Idaho 427, 430, 163 P.3d 216,

---

[6] The record does not unequivocally establish Kerr's ownership interest in the house. Nonetheless, we construe the facts in favor of the plaintiff.

[7] The actual affidavit is not in the record presented to this Court. However, it is referenced in the district court's opinion, decision, and order on motion for summary judgment and motion to dismiss.

219 (2007). Kerr need not prove the statement's falsity or that Bank of America acted with actual malice. *Id.*

In support of the second motion for summary judgment, Bank of America submitted two affidavits for the court's consideration. One affidavit was from Karen Doran, Assistant Vice President and Operations Team Lead of Northwest Legal Order Processing. The affidavit indicated she had contacted various departments in the bank, which had conducted searches of bank records, and those searches were all unable to confirm that Bank of America had any contact with any other financial institution regarding Kerr, his account, or his personal information. The second affidavit was from the banker, Landon Perrenoud, whom Kerr alleged had given out his personal information or had spoken to other financial institutions. Perrenoud averred he spoke about Kerr and his account only with the branch manager. With this evidence, Bank of America met its burden, through its own affirmative showing, that proof of the first element of the defamation claim--communication to others--was lacking in the record.

Kerr then had the burden of providing other *admissible* evidence to show there was a genuine issue for trial. Other than Kerr's assertion in the complaint that Bank of America told other financial institutions to avoid dealing with him because of excessive fees and overdrafts on his account, Kerr presented no affidavits from any individuals with whom Bank of America communicated. Kerr made blanket claims such as "plaintiff is the most libel slandered person since they cruxified [sic] Jesus. The bank paid everyone to libel slander the plaintiff," and filed several exhibits. Nothing in either the statements or the exhibits shows any specific defamatory communication to others. Moreover, the exhibits were not properly authenticated or given a proper foundation to be admissible as evidence. Without pointing to a concrete statement, Kerr cannot prove defamation and the district court properly granted the second motion for summary judgment to Bank of America.

### C. Motions for Sanctions and/or Cease and Desist Orders

Kerr made eleven motions for sanctions and/or cease and desist orders. As the allegations of both civil wrongs and criminal violations contained in the motions are too numerous to be recounted here, they include for example: credit agencies putting old debts on Kerr's credit reports and putting the same debt on more than once under different accounts, planned beatings of Kerr's child at school while school officials turn a blind eye, being poisoned at local restaurants, tortious interference with loan modifications, and alterations of Kerr's wife's

blood test results. Kerr concludes Bank of America has paid all of the individuals involved in such activities to perpetrate the wrongs on Kerr and his family. When questioned by the court whether there was evidence connecting Bank of America to these wrongs, Kerr replied that because Bank of America had not responded to his discovery requests, he was unable to produce emails and phone calls that would prove his allegations.

Bank of America's attorney opposed the motions and filed an affidavit averring she had not contacted any of the individuals in Kerr's many allegations. She also argued the phone calls by and to Bank of America were too voluminous to be kept in any storage capacity, and had there been any investigation by the bank into Kerr's account, there would be a file or record containing the details of the investigation, including emails and phone calls, but it simply did not exist.

Whether to impose sanctions is within the trial court's discretion and on appeal, will only be reviewed for an abuse of that discretion. *S. Idaho Prod. Credit Ass'n v. Astorquia*, 113 Idaho 526, 529, 746 P.2d 985, 988 (1987); *Fish Haven Resort, Inc. v. Arnold*, 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct. App. 1991). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

We find the trial court acted within its discretion in denying the motions for sanctions. The court clearly recognized it was under no obligation to impose sanctions and acted within the boundaries of such discretion in assessing the admissibility of the evidence provided in support of the sanctions. In an exercise of reason the court stated:

> I see absolutely no evidence from anything that's been presented to me that these assertions made in the motions for sanctions and cease and desist have anything to do with the bank whatsoever. And, in fact, most of them seem to be, if not random, certainly unrelated to this commercial relationship. So these motions will be denied.

Furthermore, Kerr makes no pointed allegations of how the court abused its discretion. He only states, "The cease and desist motions should have prevailed," and "The violations of the criminal

actions should have been addressed and charges filed." However, we find nothing lacking in the trial court's decision denying the motions.

### D.     Motion for Change of Venue

Kerr filed a motion for a change of venue because he believed he could not receive a fair trial. The motion was predicated substantially on the same allegations contained within the motions for sanctions and/or cease and desist orders. Bank of America argued that the exhibits submitted in support of the motion were neither authenticated nor given a proper foundation for admissibility, leaving no evidence to establish a factual or legal basis for the claims. It further asserted Kerr had chosen the particular venue in which to file his case, it was the area where the alleged conduct gave rise to Kerr's claims, and there was no showing that justice would be better served by changing venue.

The determination of venue is within the discretion of the court in cases regarding the convenience of witnesses or impartiality of a trial, *Hayes v. Kingston*, 140 Idaho 551, 554, 96 P.3d 652, 655 (2004). We review the denial of a change of venue for an abuse of discretion.

It was Kerr's burden to show, through affidavits or other satisfactory proof, that there was reason to believe he could not receive a fair trial or that the convenience of witnesses and the ends of justice would be promoted. *See* I.R.C.P. 40(e). Though Kerr alleged a number of situations he believed were attributable to the Bank of America, the court found:

> There is no affidavit that asserts these things. I am just generally reading what has been presented. But even if they were supported by affidavit, I find that there's no basis that these generalized complaints against the community, number one, can be attributed to the bank and, number two, prevent him from having a fair trial in this court. They're the same kind of things that would prevent a fair trial anywhere. There's simply no factual presentation to the Court that it complies with the rule that would allow this Court to make a determination that a fair trial cannot be had.

The court properly exercised its discretion in denying the motion, as Kerr did not demonstrate that any of the circumstances warranting a change of venue under the rule were present in this case.

### E.     Motion to Extend Mediation

Kerr asserts that the mediation, ordered by the court, should have settled the case. Kerr insinuates that unethical behavior by Bank of America's lawyer, and perhaps the judge, caused the mediation to be extended and ultimately mooted.

Under Idaho Rule of Civil Procedure 16(k)(4), the decision to order mediation is left to the discretion of the trial court. So too is the decision whether to postpone mediation in the interests of the parties. In this case, the district court did not abuse its discretion in extending time for mediation in order to consider the second motion for summary judgment. Rather, it was an exercise of reason by the court: the grant of the second summary judgment mooted the need to mediate and by first deciding the motion for summary judgment, the court saved both parties, and the mediator, the time and expense of mediation where there were no claims for relief left to be dealt with. We find no error by the district court.

## F.     Attorney Fees on Appeal

Bank of America requests attorney fees on appeal allowed under Idaho Code § 12-120(3) for cases regarding a commercial relationship and under Idaho Code § 12-121 for the prevailing party in a civil action. An award of attorney fees may be granted under Idaho Code § 12-121 and Idaho Appellate Rule 41 to the prevailing party, and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995).

On appeal, Kerr has not acknowledged, much less addressed, the deficiencies the trial court found in his complaint or subsequent filings with the court. He has identified little to no legal authority which would support his many claims. Kerr has not addressed the district court's factual or legal findings regarding his ability to attribute any of his numerous allegations to the Bank of America, or its agents, by producing admissible affidavits and exhibits. Kerr had a year, between the filing of the complaint and the hearing on the second motion for summary judgment, in which to address the admissibility problems in his exhibits and to support his conclusory statements with facts and, yet, did not do so. While perhaps one or two claims may have been sufficiently plead to withstand summary judgment in some respects, Kerr failed in all claims to allege harm caused by Bank of America. Under these circumstances, we find that Kerr has pursued this appeal without a reasonable basis in fact or law and, therefore, award Bank of America attorney fees.[8]

---

[8]     Since we award attorney fees under Idaho Code § 12-121 and Idaho Appellate Rule 41, we do not address whether Bank of America is entitled to attorney fees under Idaho Code § 12-120(3).

### III.
### CONCLUSION

We conclude Kerr failed to state a claim for intentional infliction of emotional distress and there were no genuine issues of material fact as to Kerr's other claims, entitling Bank of America to judgment as a matter of law on those claims. We also conclude the district court acted within its discretion when denying the motions for sanctions and/or cease and desist orders, denying the motion for change of venue and granting the motion extending mediation. Therefore, we affirm judgment for Bank of America and award attorney fees and costs to Bank of America.[9]

Chief Judge GRATTON and Judge MELANSON **CONCUR.**

---

[9] Idaho Appellate Rule 40 provides for the award of costs on appeal. Such costs are awarded simply as a matter of course to the prevailing party. *Butters v. Valdez*, 149 Idaho 764, 771, 241 P.3d 7, 14 (Ct. App. 2010).