# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38743

IDAHO WOOL GROWERS
ASSOCIATION, INC., an Idaho corporation,
individually and on behalf of its members;
FRANK SHIRTS, JR., individually and as a
member of the Idaho Wool Growers
Association; RONALD W. SHIRTS; LESLIE
SHIRTS; JOHN T. SHIRTS, individually and
dba SHIRTS BROTHERS SHEEP and as
members of the IDAHO WOOL GROWERS
ASSOCIATION,

    Plaintiffs-Appellants,

v.

STATE OF IDAHO; IDAHO FISH & GAME
COMMISSION; IDAHO DEPARTMENT
OF FISH & GAME; CAL GROEN, Director
of the IDAHO DEPARTMENT OF FISH &
GAME,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2012 Term

2012 Opinion No. 124

Filed: September 14, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Adams County. The Honorable Bradly S. Ford, District Judge.

The district court's judgment, dismissing the complaint, is <u>affirmed</u>.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for appellants. Samuel A. Diddle argued.

Lawrence G. Wasden, Attorney General, Boise, for respondents. Steven W. Strack argued.

_____

J. JONES, Justice.

The Idaho Wool Growers Association (IWGA) and several of its members brought suit against the State of Idaho, claiming that the State failed to protect domestic sheep operators from curtailment of their grazing allotments by the United States Forest Service. The curtailment of the

1

allotments was designed to accommodate the reintroduction of bighorn sheep in the Hells Canyon area. In their complaint, the Wool Growers alleged that the State was obligated to redress damage caused to domestic sheep operations by virtue of the reintroduction. The district court dismissed the Wool Growers' complaint for failure to state a claim upon which relief can be granted. The Wool Growers have appealed that dismissal, which we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

Frank Shirts, Jr. (Shirts) and Ronald, Leslie and John Shirts, who do business as Shirts Brothers Sheep (Shirts Brothers), are holders of federal grazing permits allowing them to graze allotments in the Payette National Forest and the Hells Canyon area. Shirts and Shirts Brothers are members of the IWGA, an association of sheep ranch operators.[1] The Hells Canyon Bighorn Sheep Restoration Committee (the Committee)—made up of various federal and state agencies, including the Idaho Department of Fish and Game (IDFG)—began an effort in 1996 to reintroduce bighorn sheep in the Hells Canyon area.[2]

Allegedly in response to threats by IWGA members to oppose and lobby against the reintroduction, the Committee sent the following letter to IWGA Executive Director Stan Boyd:

Dear Mr. Boyd:

The effort to transplant bighorn sheep into historic habitat in Hells Canyon is a cooperative project involving the States of Idaho, Oregon, and Washington, The Foundation for North American Wild Sheep, the Forest Service, and the Bureau of Land Management. The Hells Canyon Bighorn Sheep Restoration Committee (the committee) is interested in having the support of the woolgrowers industry for this effort to repopulate parts of Hells Canyon with bighorn sheep.

The Committee understands that bighorns may occasionally migrate outside of their designated range and come into contact with domestic sheep. These bighorns will be considered "at risk" for potential disease transmission and death. There is also the potential for an exposed bighorn to leave the area and spread disease to other bighorn sheep. Under these conditions, the Idaho Department of Fish and Game, the Oregon Department of Fish and Wildlife, and the Washington Department of Wildlife will assume the responsibility for bighorn losses and further disease transmission in their respective states. The three Departments will also take whatever action is necessary to reduce further losses of bighorn sheep without adversely impacting existing domestic sheep operators. The enclosed map clearly delineates the project area within the Hells Canyon complex. Bighorns straying into

---

[1] In this opinion, Shirts, Shirts Brothers, and IWGA will be collectively referred to as "the Wool Growers."
[2] Bighorn sheep were historically abundant in the area but were extirpated by around 1945.

> currently active sheep allotments will be considered "at risk" by all of the Committee entities. This means that the Committee recognizes the existing domestic sheep operations in or adjacent to the Hells Canyon complex, on both National Forest and private lands, and accepts the potential risk of disease transmission and loss of bighorn sheep when bighorns invade domestic sheep operations.
>
> The Committee will make every effort to keep interested parties informed about actions being considered by the Committee in its effort to repopulate Hells Canyon with bighorn sheep. We will provide all health information gathered on bighorn sheep to the woolgrowers industry and other interested parties.

The letter was signed by representatives of IDFG and other members of the Committee. The letter is dated January 16, 1997, and was received by the Wool Growers on March 11, 1997.

Shortly after the 1997 letter was executed, the Idaho Legislature amended I.C. § 36-106(e)(5) to include a new subsection (D), providing that the director of IDFG shall not "undertake actual transplants of bighorn sheep into areas they do not now inhabit or to augment the number of bighorn sheep in existing herds" until notice is given to affected boards of county commissioners, land owners, and grazing permit holders. 1997 Idaho Sess. Laws 863, 864–65. The new subsection also required the director to grant a hearing to "any affected individual or entity [who] expresses written concern." *Id.* Further, it provided:

> Upon any transplant of bighorn sheep into areas they do not now inhabit or a transplant to augment existing populations, the department shall provide for any affected federal or state land grazing permittees or owners or leaseholders of private land a written letter signed by all federal, state and private entities responsible for the transplant stating that the existing sheep or livestock operations in the area of any such bighorn sheep transplant are recognized and that the potential risk, if any, of disease transmission and loss of bighorn sheep when the same invade domestic livestock or sheep operations is accepted.

*Id.* at 865.

Bighorn sheep were subsequently reintroduced into Hells Canyon. Years later, beginning in April 2007, the U.S. Forest Service began to modify various grazing permits, including those of Shirts and Shirts Brothers. The permit modifications were the result of an administrative appeal, in which the Western Watersheds Project sought to enjoin sheep grazing on six allotments held by Shirts and Shirts Brothers based on a high risk of disease transmission from domestic sheep to bighorns. *Watersheds Project v. U.S. Forest Serv.*, No. CV-07-151-E-BLW, 2007 WL 1430734, at 1–2 (D. Idaho 2007). The Forest Service agreed to impose grazing restrictions on most of the

allotments and eventually modified several additional allotments held by Shirts and Shirts Brothers. *Id.* at 1; *Watersheds Project v. U.S. Forest Serv.*, Nos. CV-07-151-E-BLW, CV-07-241-E-BLW, 2007 WL 1729734 (D. Idaho 2007); *Watersheds Project v. U.S. Forest Serv.*, No. CV-07-151-E-BLW, 2007 WL 3407679, at 1 (D. Idaho 2007).

In April 2010, the Wool Growers sued the State of Idaho, the Idaho Fish and Game Commission, IDFG, and IDFG Director Cal Groen (collectively "IDFG"). In their First Amended Complaint, the Wool Growers claimed "significant economic losses" resulting from the Forest Service's modification of their grazing permits, alleging that IDFG "took no action to block the Forest Service from modifying the grazing allotments for Shirts and Shirts Brothers and took insufficient action to prevent Shirts and Shirts Brothers from being harmed from these decisions." They listed several claims for relief, including: (1) breach of contract, based on the allegation that the 1997 letter constituted an contract obligating IDFG to protect them from adverse effects of the bighorn reintroduction; (2) violation of I.C. § 36-106(e)(5)(D), alleging that the statute also obligated IDFG to protect them from adverse effects of the reintroduction; and (3) promissory, equitable, and quasi-estoppel, based on the allegation that the 1997 letter contained representations that induced them to withdraw their opposition to the reintroduction. IDFG moved to dismiss based in part on I.R.C.P. 12(b)(6) for failure to state a claim.

From the face of the Wool Growers' complaint and their arguments before the district court, it appears that the relief they seek from IDFG is indemnification against the economic damages they sustained as a result of the Forest Service's permit modifications. In argument to the district court, the Wool Growers "concede[d] that IDFG probably has no legal power to block the United States Forest Service from modifying federal grazing permits," and "concede[d] that if their claim against IDFG were solely that IDFG failed to 'block' the Forest Service from modifying the Shirts' grazing permits then their Complaint could be and should be dismissed." The Wool Growers' complaint did not define what action would have been sufficient to satisfy IDFG's alleged contractual and statutory duties, but in argument they asserted that IDFG was obligated to "protect and indemnify" them from loss by "providing alternative sources of feed; providing alternative grazing lands; or providing monetary compensation for [their] economic losses." The district court found the Wool Growers to have conceded "they are not pursuing an action for specific performance of some alternative means of mitigating the alleged damages caused to [the Wool Growers] by the [Forest Service]," but rather, "monetary indemnification from the IDFG for

4

the act of the [Forest Service] reducing [their] grazing allotment." In sum, the Wool Growers' allegation is that "IDFG through its Letter Agreement and the State through enactment of the 1997 statute . . . guaranteed that the Wool Growers members would be indemnified for any economic loss they suffered because of the reintroduction of the bighorns."

The district court held that the Wool Growers' complaint failed to allege any claim upon which relief could be granted and therefore dismissed the action pursuant to I.R.C.P. 12(b)(6). The Wool Growers timely appealed to this Court.

## II.
## ISSUES ON APPEAL

I.    Did the district court err in determining that the Wool Growers failed to state a claim for indemnification based on the 1997 letter?

II.   Did the district court err in determining that the Wool Growers failed to state a claim for indemnification based on I.C. § 36-106(e)(5)(D)?

III.  Did the district court err in determining that the Wool Growers failed to state a claim for promissory estoppel, equitable estoppel, and quasi-estoppel?

IV.   Is either party entitled to attorney fees under I.C. § 12-117?

## III.
## DISCUSSION

### A.    Standard of Review.

This Court reviews *de novo* a district court's dismissal of a complaint under I.R.C.P. 12(b)(6) for failure to state a claim. *Hoffer v. City of Boise*, 151 Idaho 400, 402, 257 P.3d 1226, 1228 (2011). Rule 8 requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." I.R.C.P. 8(a). Accordingly, on review of a dismissal this Court determines "whether the non-movant has alleged sufficient facts in support of his claim, which if true, would entitle him to relief." *Hoffer*, 151 Idaho at 402, 257 P.3d at 1228 (quoting *Orrock v. Appleton*, 147 Idaho 613, 618, 213 P.3d 398, 403 (2009)). In doing so, the Court draws all reasonable inferences in favor of the non-moving party. *Id.* The interpretation of an unambiguous contract or statute is a question of law subject to free review. *Bakker v. Thunder Spring–Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005); *Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 420, 247 P.3d 644, 647 (2011).

### B.    The district court correctly determined that the Wool Growers failed to state a claim for relief based on the 1997 letter because the letter plainly does not contain a promise to indemnify.

In regard to the Wool Growers' breach of contract claim, the district court found that the

plain language of the 1997 letter did not contain any promise that IDFG would indemnify the Wool Growers against damage caused by actions of third parties. The court alternatively found that any such promise by IDFG would be void for violating I.C. § 59-1015, which prohibits state entities from incurring any liability of indebtedness without, or in excess of, a legislative appropriation. On appeal, the Wool Growers argue that they alleged the elements of a claim for breach of contract, which they assert is sufficient to survive IDFG's Rule 12(b)(6) motion. Further, they point to several statements in the 1997 letter that they allege guaranteed indemnification, including: (1) that the Committee "recognizes the existing domestic sheep operations" and "accepts the potential risk of disease transmission and loss of bighorn sheep"; and (2) that state wildlife agencies, including IDFG, "assume the responsibility for bighorn losses" and will "take whatever action is necessary to reduce further losses of bighorn sheep without adversely impacting existing domestic sheep operators." Finally, the Wool Growers argue that because there is no indication in the record as to whether a legislative appropriation exists that would allow for compensation or indemnification of their claim, the issue relating to I.C. § 59-1015 is inappropriate for determination upon a Rule 12(b)(6) motion. IDFG responds that dismissal was appropriate because the letter does not constitute a contract, contains no promise of indemnification, and, even if it did, such a promise would be void under I.C. § 59-1015.

In order to state a claim for breach of contract, the plaintiff must first allege that there was an agreement creating a contractual duty that, if materially breached, would entitle the plaintiff to the relief sought. *Independence Lead Mines Co. v. Hecla Mining Co.*, 143 Idaho 22, 28, 137 P.3d 409, 415 (2006). Where a written agreement is alleged, a court must begin by examining the language of the agreement itself. *Id.* at 26, 137 P.3d at 413. "If the terms of the contract are clear and unambiguous, the meaning and legal effect of the contract are questions of law which must be determined from the plain meaning of the words used." *Id.* The language in a written agreement imposing a duty to indemnify must be "clear, unequivocal, and certain." 41 Am. Jur. 2d *Indemnity* § 7.

Here, based on the allegations in the Wool Growers' complaint—which incorporates the 1997 letter—this Court assumes for purposes of a Rule 12(b)(6) motion that the letter constitutes a contract. *Shore v. Peterson*, 146 Idaho 903, 913, 204 P.3d 1114, 1124 (2009) ("Whether a contract . . . was formed is a question of fact."). However, a review of the letter's plain language reveals no promise that would create a contractual duty to indemnify, a determination that the district court

6

could properly make as a matter of law. *Bakker*, 141 Idaho at 190, 108 P.3d at 337 (interpretation of an unambiguous contract is a question of law). Although the Wool Growers argue it was not proper to look at the alleged contract's substance upon a Rule 12(b)(6) motion, the entirety of the letter was incorporated into and made a part of the complaint. Further, the letter was the sole basis asserted by the Wool Growers to support their contract claim. Because the letter's contents are unambiguous, the district court was within its power to examine its language and decide as a matter of law whether it created a duty to indemnify.

As the district court found, the several statements in the letter recognizing domestic sheep operations and accepting the risk of disease transmission only obligate IDFG and the Committee to hold the Wool Growers harmless for damage to bighorns resulting from the reintroduction. These statements cannot be read to create an affirmative duty on the part of IDFG to protect the Wool Growers from damage to their domestic sheep operations. As the district court stated, "[t]he focus of the language is the acceptance of injury, loss or impact on the bighorn sheep"—not the domestic sheep. Moreover, the language certainly does not obligate IDFG to prevent or indemnify against damage to the Wool Growers caused by the independent actions of a third party, such as the Forest Service.

The only statement that might possibly be read to require some protection of the Wool Growers' operations is, "[t]he three Departments will also take whatever action is necessary to reduce further losses of bighorn sheep without adversely impacting existing domestic sheep operators." However, this language, too, is focused on the protection of the bighorns, and merely restricts the manner in which IDFG may act to carry out that protection. Moreover, it is only a restriction on actions taken by IDFG—not other agencies involved in the Committee, over which IDFG has no control. Thus, while the 1997 letter could possibly be read for Rule 12(b)(6) purposes to create a claim based on affirmative IDFG actions that result in damage to operators, it cannot by any stretch be read to obligate IDFG to prevent or mitigate harm caused by the Forest Service's actions. As the district court found, the Wool Growers do not allege that IDFG caused the Forest Service to modify their grazing rights or took any other action adversely affecting the Wool Growers. Rather, they only allege that IDFG failed to prevent the Forest Service from making the modifications and failed to mitigate the resulting harm. From the plain language of the letter, it is clear that IDFG made no such commitment. Thus, the district court correctly dismissed the Wool

Growers' contract claim.[3]

**C.**     **The district court correctly determined that the Wool Growers failed to state a claim based on I.C. § 36-106(e)(5)(D) because that statute plainly does not provide a right of indemnification.**

In regard to the I.C. § 36-106(e)(5)(D) claim, the district court found that the provision was unambiguous and that nothing in its plain language guaranteed protection from loss caused by the bighorn reintroduction, "let alone an economic loss occasioned by the act of a Federal agency." Accordingly, the district court found no claim for indemnification could be stated under that statute. On appeal, the Wool Growers point to language in the statute that mirrors the 1997 letter—specifically that domestic sheep operators are "recognized," the risk of disease transmission is "accepted," and that the statute obligates IDFG to provide a signed letter to any affected operator indicating as much. They assert that the statute "should be read to authorize an award of damages against the State in the amount of the economic harm sustained," that the legislative history supports this reading, and that they should be entitled to present further evidence of legislative intent. IDFG supports the district court's holding, arguing that the statute plainly does not mandate the indemnification the Wool Growers seek.

Here again, we look no further than the plain language at issue. Just as the similar statements in the 1997 letter cannot be read to grant the Wool Growers indemnification, neither can the statute be read to provide for indemnification. Indeed, there are even fewer grounds for indemnification under the statute, as it contains no similar "whatever action is necessary" statement as in the letter. Just as the 1997 letter can—at most—be construed as a hold harmless agreement, I.C. § 36-106(e)(5)(D) can only be construed as a mandate that domestic sheep operations be held harmless for disease transmission to reintroduced bighorns. But the statute clearly does not obligate IDFG to affirmatively protect domestic sheep operators from harm—and certainly not from harm caused by the independent actions of the Forest Service. Further, as IDFG points out, this Court has squarely rejected the argument that the Wool Growers should be allowed to establish a contrary legislative intent through further presentation of evidence. *Gillihan v. Gump*, 140 Idaho 264, 268, 92 P.3d 514, 518 (2004), *abrogated on other grounds by Gonzalez v. Thacker*, 148 Idaho 879, 231 P.3d 524 (2009). Legislative intent is a clear question of law. *Doe v. Boy Scouts of Am.*,

---

[3] Because the contract claim was properly dismissed based on the plain language of the 1997 letter, this Court need not address the district court's alternative holding that the agreement was void under I.C. § 59-1015.

148 Idaho 427, 430, 224 P.3d 494, 497 (2009). Consequently, the district court was within its power to dismiss the Wool Growers' statutory claim under Rule 12(b)(6), based on the plain language of I.C. § 36-106(e)(5)(D).

> **D.** **The district court correctly determined that the Wool Growers failed to state a claim for equitable relief because they did not allege a promise or representation of indemnification.**

Finally, the district court found that the Wool Growers' estoppel claims failed for the same reason as the contract claim—because the letter did not contain any promise or representation that the Wool Growers would be indemnified. On appeal, the Wool Growers argue that its estoppel claims should not be dismissed on a Rule 12(b)(6) motion because they require further fact-finding. In response, IDFG argues that estoppel generally cannot be applied against state agencies acting in a sovereign or governmental capacity and that the creation of indebtedness in violation of I.C. § 59-1015 cannot be disregarded by invoking estoppel.

Although estoppel is generally not applicable to state agencies acting in a sovereign or governmental capacity, *Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 845, 70 P.3d 669, 683 (2003), it may apply where required by notions of justice and fair play. *Brandt v. State*, 126 Idaho 101, 105, 878 P.2d 800, 805 (Ct. App. 1994). *See also City of Sandpoint v. Sandpoint Ind. Hwy. Dist.*, 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994) (holding that estoppel may apply against a highway district "in order to prevent manifest injustice"). Still, in order to state a claim for promissory, equitable, and quasi-estoppel, a plaintiff must at least allege, among other things, a promise or representation by the party to be estopped. *Brown v. City of Pocatello*, 148 Idaho 802, 807–08, 229 P.3d 1164, 1169–70 (2010) (Promissory estoppel requires a promise inducing reasonable and detrimental reliance.); *Ogden v. Griffith*, 149 Idaho 489, 495, 236 P.3d 1249, 1255 (2010) (Equitable estoppel requires "a false representation or concealment of a material fact."); *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 443, 235 P.3d 387, 393 (2010) (Quasi-estoppel involves a party taking "a different position than his or her original position.").

Here, regardless of issues of sovereignty, the district court was correct in dismissing the Wool Growers' estoppel claims because no promise to protect—and certainly not a promise to indemnify—appears on the face of the 1997 letter. First, although the Wool Growers argue their estoppel claims were inappropriate for dismissal under Rule 12(b)(6), they base those claims solely on the representations in the 1997 letter. Because they hung their hat on the contents of the letter alone—and incorporated it into the complaint—the district court could well determine whether the

letter contained the promise or representation alleged without any further fact-finding. And, the court correctly determined that it did not. The Wool Growers base their claims for relief on an alleged promise of protection or indemnity, which they assert induced them to withdraw opposition to the reintroduction plan and cease lobbying efforts. However, as discussed above, such a promise appears nowhere on the face of the 1997 letter. Thus, in the absence of that crucial element of the Wool Growers' three estoppel claims, the district court was correct in dismissing those claims under Rule 12(b)(6).

>**E.**     **IDFG is entitled to attorney fees under I.C. § 12-117 because the Wool Growers pursued this appeal without reasonable basis in fact or law.**

Each party asserts entitlement to attorney fees under I.C. § 12-117, arguing that the other's position is without reasonable factual or legal basis. Idaho Code § 12-117(1) allows for an award of attorney fees in any "proceeding involving as adverse parties a state agency or a political subdivision and a person" if the court "finds that the nonprevailing party acted without a reasonable basis in fact or law." Here, this Court finds that the district court's Rule 12(b)(6) dismissal was proper, and also finds an award of attorney fees in favor of the respondents—the prevailing party—is appropriate. As explained above, although the Wool Growers' complaint alleges that IDFG failed to "block" the Forest Service from modifying their grazing permits, they later conceded that IDFG had no power to do so and that such a claim should be dismissed. Thus, they not only made allegations without reasonable basis in law, but they did so knowingly.

Further, a look at the plain language of the 1997 letter and I.C. § 36-106(e)(5)(D) is all that is needed to see that the Wool Growers' claims for indemnity are neither factually nor legally meritorious. As discussed above, assuming the letter is a contract, it is at most a hold harmless agreement in which IDFG assumed the risk of loss to bighorns—not domestic sheep. It contains no promise that IDFG would affirmatively act to protect the Wool Growers, much less a promise to indemnify them against actions of an independent federal agency over which the Wool Growers knew IDFG had no control. The statute contained even less language on which to base a claim for indemnification, and the equitable claims appear to be nothing more than a final shot in the dark. Because the weakness of the Wool Growers' case was plain to see on the face of the letter and the statute, they acted without a reasonable basis in law and fact in pursuing this appeal. Thus, IDFG is awarded attorney fees under I.C. § 12-117.

## IV.
## CONCLUSION

For the foregoing reasons, the district court correctly dismissed the Wool Growers' complaint for failure to state a claim. We accordingly affirm and award costs and attorney fees to respondents.

Chief Justice BURDICK, and Justices EISMANN and HORTON and Justice Pro Tem KIDWELL CONCUR.