IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 52373

THOMAS EUGENE CREECH )
)
  Petitioner-Appellant, )
) **Boise, November 2024 Term**
v. )
) **Filed: November 27, 2024**
RANDY VALLEY, WARDEN, )
IDAHO MAXIMUM SECURITY ) **Melanie Gagnepain, Clerk**
INSTITUTION )
)
  Respondent. )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jason D. Scott, District Judge.

The district court's order of dismissal is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant Thomas Eugene Creech. Submitted on the briefs.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. Submitted on the briefs.

_____

BEVAN, Chief Justice.

Thomas Eugene Creech appeals from the district court's order dismissing his application for a writ of habeas corpus. Creech was sentenced to death in 1995. Earlier this year, the State of Idaho attempted to execute Creech by lethal injection, but the process failed due to the inability to establish reliable peripheral intravenous access. The execution team spent nearly an hour attempting to establish venous access in various parts of Creech's body, including his arms, hands, and ankles, but each attempt resulted in vein collapse. After numerous failed attempts, the procedure was halted.

Following the attempted execution, Creech sought post-conviction relief which was denied by the district court and this Court on appeal. *See Creech v. State*, ___ Idaho ___, ___ P.3d ___,

1

2024 WL 4678228 (November 5, 2024). While the post-conviction appeal was pending before this Court, Creech applied for a writ of habeas corpus in the district court, arguing, among other things, that any further attempt to carry out his death sentence would violate his constitutional rights. The district court summarily dismissed Creech's application with prejudice and Creech appeals, contending that the State's revised standard operating procedure and execution protocols constitute cruel and unusual punishment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Creech's prior cases are complex and began in the 1970s. The history is partly recounted in *Creech v. Richardson*, 59 F.4th 372, 376–82 (9th Cir. 2022). We will only summarize the appeals and habeas corpus claims relevant to this appeal.

Creech was scheduled for execution on February 28, 2024. The State was unsuccessful in its attempt to execute Creech because peripheral vein access could not be established. Shortly after the execution attempt failed, Creech filed a petition for post-conviction relief which was recently decided against him by this Court.[1] In October 2024, while Creech's post-conviction petition was pending before this Court, the Idaho Department of Correction modified its standard operating procedure for executions to allow a qualified physician to establish a central line if peripheral vein access is not attainable. *See* IDAHO DEPARTMENT OF CORRECTION, *IDOC Updates Execution SOP, Protocols* (Oct. 15, 2024), https://www.idoc.idaho.gov/content/news/idoc-updates-execution-sop-protocols.

> Under the new protocols, the condemned person will first be escorted to the execution preparation room where the medical team will determine if peripheral IV access can be established. If the medical team leader determines peripheral IV access is not attainable, a qualified physician will establish a central line. Central lines are commonly used in medical situations for the administration of IV fluids or medications when it is difficult to establish or maintain peripheral venous access.

IDAHO DEPARTMENT OF CORRECTION, *IDOC Updates Execution SOP, Protocols* (Oct. 15, 2024), https://www.idoc.idaho.gov/content/news/idoc-updates-execution-sop-protocols. A new death warrant for Creech was issued on October 16, 2024, which set Creech's execution for November 13, 2024. Creech also filed for habeas relief in federal court. Creech's execution was recently stayed by the federal district court pending disposition of his federal habeas corpus petition.

---

[1] *Creech v. State*, ___ Idaho ___, ___ P.3d ___, 2024 WL 4678228 (November 5, 2024), Supreme Court Docket No. 52327. The post-conviction proceeding is separate but related to this appeal.

While the appeal of his post-conviction action was pending before this Court, Creech filed an application for a writ of habeas corpus in Ada County district court, alleging various state and federal constitutional violations.[2] He made three distinct claims. Claim One alleged it would be cruel and unusual to carry out Creech's death sentence after the failed execution, considering the resulting psychological impact and trauma caused by the first failed attempt. Claim Two asserted that the use of a central venous line would be cruel and unusual, given our nation's evolving standards of decency, the medical procedure's extraordinarily infrequent use in executions, and the fact that it is prone to failure with potentially painful complications. Finally, Claim Three raised a double jeopardy challenge based on the prolonged events leading up to and following the unsuccessful execution attempt.

The district court dismissed all three claims. Claims One and Three were dismissed on res judicata grounds because Creech had unsuccessfully raised the same substantive claims in the post-conviction case. Claim Two was dismissed on two grounds. First, it was dismissed because Creech did not allege and could not establish that the use of a central line rises to the level of indecency or cruelty prohibited by the United States Constitution. Second, the district court also found that Creech failed to propose an alternative method of execution, as required to assert a "method of execution" challenge. Creech has not appealed the dismissal of Claims One and Three; therefore, only Claim Two is before us in this appeal.

The district court entered judgment without waiting for Creech's application to be served on Respondent, as allowed under Idaho Code section 19-4209(1)(c). The district court noted that Creech's challenge was facial rather than as applied. As to Claim Two, the court noted that placing a central line serves as a backup method when peripheral vein access is unattainable. It continued and said Creech's data demonstrating "the rarity of accomplishing an execution by placing a central venous line doesn't make a case that, according to our society's evolving standards of decency, placing a central venous line—a common, simple medical procedure—is a cruel and unusual punishment." Additionally, the court noted that a prisoner who is asserting a method of execution challenge, like Creech pleaded in Claim Two, must propose a feasible alternative execution method, which Creech failed to do. Creech now asserts the district court erred in these legal conclusions.

---

[2] U.S. CONST. amends. V, VIII, XIV; and IDAHO CONST. art. I., §§ 6, 13.

**1.**     Whether the district court erred by dismissing Claim Two of Creech's Application For Writ of Habeas Corpus.

### III. STANDARDS OF REVIEW

A prisoner may apply for a writ of habeas corpus requesting that a court inquire into state or federal constitutional questions concerning the conditions of his confinement. I.C. § 19-4203(2). Conditions of confinement include the "effects of actions by government officials . . . on the life of a person." I.C. § 19-4203(7).

"A habeas corpus proceeding is a civil action and the Idaho Rules of Civil Procedure generally apply." *Matter of Writ of Habeas Corpus*, 168 Idaho 411, 416, 483 P.3d 954, 959 (2020) (citing I.C. § 19-4208). The habeas applicant has the burden of establishing error. *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003). The court may dismiss an application for writ of habeas corpus prior to service on the respondent if the court finds the application fails to "state a claim of constitutional violation upon which relief can be granted[.]" I.C. § 19-4209(1)(c).

The decision whether to issue a writ of habeas corpus is a matter of discretion. *Johnson v. State*, 85 Idaho 123, 127, 376 P.2d 704, 706 (1962). A review of the trial court's discretion asks "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). But constitutional issues are purely questions of law over which this Court exercises free review. *Thumm v. State*, 165 Idaho 405, 412, 447 P.3d 853, 860 (2019). Thus, when a district court dismisses a complaint for failing to state a claim, we review the decision *de novo*, drawing all inferences in favor of the non-moving party. *See Idaho Wool Growers Ass'n, Inc. v. State*, 154 Idaho 716, 720, 302 P.3d 341, 345 (2012). The critical question is whether the plaintiff has alleged sufficient facts that, if true, would entitle him to relief. *Id.*

### IV. ANALYSIS

**A.     Creech failed to establish a prima facie challenge to the State's method of execution.**

Creech argues the district court's *sua sponte* dismissal of Claim Two was erroneous for three reasons. First, Creech alleges the district court failed to accept the allegations in his habeas

application as true and liberally construe them in his favor. Second, Creech argues if his allegations are true, he can be granted relief under Claim Two. Third, Creech argues that he only needs to state the claim in his application – not fully brief those claims in the application. Thus, Creech maintains that it was erroneous for the district court to dismiss his application without providing him time to further develop his legal arguments.

As an initial matter, we agree with the district court that Creech did not argue below that the Idaho Constitution provides greater protection than the federal constitution as to the matters before us. Therefore, we will analyze Creech's claims solely under the Eighth Amendment and case law relevant thereto. *See Hall v. State*, 172 Idaho 334, 363, 533 P.3d 243, 272 (2023). As noted above, because the district court dismissed Creech's application for failing to state a claim, we review the dismissal *de novo*.

The Eighth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, "prohibits the infliction of 'cruel and unusual punishments,'" not punishment itself. *Glossip v. Gross*, 576 U.S. 863, 876 (2015). The Eighth Amendment "does not guarantee a prisoner a painless death." *Bucklew v. Precythe*, 587 U.S. 119, 132 (2019). Instead, it prevents the state from "superadd[ing] terror, pain, or disgrace" to executions. *Id.* at 133. "[T]he Constitution affords a measure of deference to a State's choice of execution procedures and does not authorize courts to serve as boards of inquiry charged with determining best practices for executions." *Id.* at 134 (cleaned up).

To prove that a state's method of execution is cruel and unusual, the prisoner must "establish that the method presents a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 576 U.S. at 877 (emphasis in original) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion)). Additionally, when bringing method of execution claims under the Eighth Amendment, "prisoners must identify an alternative [form of execution] that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* (citation omitted). Conclusory allegations are insufficient; the prisoner must provide "'enough facts to state a claim to relief that is plausible on its face.'" *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1295 (11th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

We turn now to Creech's application for the writ. Examples cited by Creech of condemned inmates in other jurisdictions do not support his argument that the use of a central line is cruel and

5

unusual. The use of a central vein catheter is "a standard and, often, the necessary procedure for critically ill patients." Joshua Kolikof, Katherine Peterson, & Annalee M. Baker, *Central Venous Catheter*, NATIONAL LIBRARY OF MEDICINE (July 6, 2023), https://www.ncbi.nlm.nih.gov/books/NBK557798/. Use of a central line catheter to administer lethal drugs has been upheld by multiple appellate courts. *See Nooner v. Norris*, 594 F.3d 592, 603–04 (8th Cir. 2010) (holding that Arkansas' method which allows for central line and cut-down procedures by a credentialed physician is constitutional); *Lopez v. Brewer*, 680 F.3d 1068, 1074–75 (9th Cir. 2012). Against this backdrop we also note that "the risk of negligence in implementing a death-penalty procedure . . . does not establish a cognizable Eighth Amendment claim." *Baze*, 553 U.S. at 107 (Thomas, J., concurring) (quotation marks and citation omitted). We find these authorities compelling in resolving the issue Creech presents here.

Creech has not alleged that the state will inflict unnecessary pain during an execution using central line IV access. Instead, he provides anecdotal evidence of difficulties encountered by other states during central line insertions. Creech's case is more appropriately governed by *Baze*, 553 U.S. at 48, where the United States Supreme Court explained that the only "forbidden punishments" involve "the deliberate infliction of pain for the sake of pain—superadding pain to the death sentence through torture and the like." (quotes and brackets omitted). The application does not support, with any likelihood, the conclusion that the pain other inmates purportedly suffered in other states establishes an "objectively intolerable" risk of pain for Creech, as required under the Eighth Amendment. *See Baze,* 553 U.S. at 50; *see also Lopez v. Brewer*, 680 F.3d at 1074 (citing federal circuit courts that have concluded states' IV insertion protocols do not violate the Eighth Amendment's cruel and unusual punishment clause, notwithstanding potential for problems inserting IVs); *Raby v. Livingston*, 600 F.3d 552, 558–61 (5th Cir. 2010) (upholding Texas' lethal injection protocol notwithstanding evidence of problems with inserting IVs); *Cooey v. Strickland*, 589 F.3d 210, 217–18, 224, 233–34 (6th Cir. 2009) (upholding Ohio protocol despite evidence of problems inserting IV); *Emmett v. Johnson*, 532 F.3d 291, 303, 306–08 (4th Cir. 2008) (upholding Virginia protocol despite problems with IV lines).

"[I]t is imperative for the State to employ personnel who are properly trained to competently carry out each medical step of the procedure." *Clemons v. Crawford*, 585 F.3d 1119, 1128 (8th Cir. 2009) (quotation marks and citation omitted). Here, Creech has not demonstrated that the medical team that will establish a central line if a peripheral vein is not attainable is

6

incapable of performing the task. In fact, the state has taken measures to ensure that the process by which a central line is placed is medically sound. As directed by the IDOC protocol now governing executions, to establish central venous lines, the individual on the IDOC Medical Team must be a medically licensed physician and have current central venous line catheter placement proficiency.

Thus, notwithstanding Creech's stories of inmates from other jurisdictions[3] who ostensibly suffered during executions involving central lines, no court has held that the use of a central line amounts to cruel and unusual punishment. *See id.* at 1128 (presuming that the State will employ competent and qualified employees in the absence of facts to the contrary). "The inescapable reality that an execution by any method may not go as planned—that it will be 'botched'—does not render the method 'cruel' under the constitution." *Owens v. Stirling*, 904 S.E.2d 580, 598 (S.C. 2024) (citing *State of La. ex rel. Francis v. Resweber*, 329 U.S. 459, 462–63 (1947)).

As noted above, Creech offers statistics showing that the use of a central line in executions is rare. Creech cites *Coker v. Georgia*, 433 U.S. 584, 596–597 (1977) (plurality opinion), and *Kennedy v. Louisiana*, 554 U.S. 407, 433 (2008), in support of his claim that rarity is equivalent to unusual. Creech argues that the small proportion of executions done by central line and the declining number of nationwide executions in general show that execution by using a central line would be cruel and unusual. But neither *Coker* nor *Kennedy* support this legal conclusion.

In *Coker v. Georgia*, the Supreme Court considered whether capital punishment for rape was constitutional. 433 U.S. at 586. Relevant in its analysis was the fact that offenders who were guilty of rape were rarely sentenced to death by juries. *Id.* at 596–97. Similarly, *Kennedy v. Louisiana* held that the Eighth Amendment prohibits the death penalty for the rape of a child where the crime did not result, and was not intended to result, in the death of the victim. The Court again evaluated the proportionality of such a sentence against the gravity of the crime itself. 554 U.S. at 433. Thus, both *Coker* and *Kennedy* considered the proportionality of the sentence to the crime,

---

[3] Creech's application claimed that the "use of central lines in executions in other jurisdictions has been fraught with botched attempts and horrific outcomes." He identified five "documented instances" of inmates in other jurisdictions who were executed by a central line. One execution was described as a "bloody mess" and the inmate was declared dead forty-three minutes after drugs were administered. Another inmate in Alabama had his bladder and artery punctured by the central line. In Arizona, witnesses noticed a "fair amount of blood" after a central line was placed in an inmate. Another execution in Alabama took hours despite the use of a central line. Finally, another inmate in Alabama survived after doctors "repeatedly stabb[ed] [his] collarbone area with a large needle in an attempt to begin placing a central line IV."

not the *method* by which one was to be executed. That is not what we have here. While statistics are relevant in the Eighth Amendment analysis, they are not dispositive. Administering drugs through a central line may be rare but not unusual. *See Glossip*, 576 U.S. at 895 (Scalia, J., concurring) (explaining that unusual is not defined as "decline in use"). "The simple statistical fact a method of execution has never been used, or has not been commonly used in recent years, cannot render the method 'unusual' in its constitutional sense." *Owens*, 904 S.E.2d at 598.

What Creech's statistics do show is that executions writ large have been on the decline. National trends are relevant, *Hall v. Florida*, 572 U.S. 701, 714–18 (2014), however, the Eighth Amendment plainly permits capital punishment. *Bucklew v. Precythe*, 587 U.S. 119, 129 (2019); *see also Baze*, 553 U.S. at 94–95 (Thomas, J., concurring) (explaining that at the time the Framers adopted the bill of rights, capital punishment was the standard penalty for all serious crimes). The decline in nationwide executions does not indicate, as Creech has argued, that executing him by the use of a central line to administer a lethal injection is cruel and unusual. Instead, it indicates that the death penalty remains an issue of intense public debate. This is no surprise. "Capital punishment presents moral questions that philosophers, theologians, and statesmen have grappled with for millennia." *Glossip*, 576 U.S. at 899 (Scalia, J., concurring). That said, this Court has continued to uphold capital punishment in Idaho notwithstanding arguments based on national statistical trends and evolving standards of decency. *See Hairston v. State*, 167 Idaho 462, 468, 472 P.3d 44, 50 (2020) (upholding death sentence of 19-year-old offender, notwithstanding evolving standards of decency and the opposing views of those in "academia, the American Bar Association and other circles opposed to capital punishment").

Thus, the district court did not err in concluding that Creech failed to assert a habeas claim upon which relief may be granted. Even accepting Creech's allegations as true, he has not established that use of a central line catheter is "*sure or very likely* to cause serious illness and needless suffering[.]" *Glossip*, 576 U.S. at 877 (emphasis in original) (quoting *Baze*, 553 U.S. at 50 (quotation marks and citation omitted)). Nor has he offered an alternative method of execution in his application which is required in making a method of execution claim like Creech makes here. *Id.*; *see also Baze*, 553 U.S. at 52. As the district court pointed out, and we agree, an inmate making a method of execution challenge must offer an alternative method of execution to state a prima facie case for the same. *See Bucklew v. Lombardi*, 783 F.3d 1120, 1128 (8th Cir. 2015) (holding that the prisoner must identify an alternative execution method "at the earliest possible

8

time"); *Johnson v. Lombardi*, 809 F.3d 388, 390 (8th Cir. 2015) (affirming dismissal of Eighth Amendment challenge when inmate "failed plausibly to plead sufficient facts" establishing feasible alternative method); *Zink v. Lombardi*, 783 F.3d 1089, 1103 (8th Cir. 2015) ("The existence of such an alternative method of execution, therefore, is a necessary element of an Eighth Amendment claim, and this element—like any element of a claim—must be pleaded adequately."). Creech failed to do so in his application. We thus affirm the decision of the district court.

### V. CONCLUSION

The district court's order of dismissal is affirmed.

JUSTICES BRODY, MOELLER, MEYER, and JUSTICE BURDICK, pro tem concur.