W. JONES, Justice.
This case stems from a shareholder derivative action filed by Scott Orrock (Orrock) on behalf of Micron Technology, Inc. (Micron) against the officers and directors of Micron. The complaint alleged that some of the officers and directors violated state law, breached their fiduciary duties, abused their control, engaged in gross mismanagement, wasted corporate assets and were unjustly enriched thereby causing substantial loss and damages to Micron. The district court dismissed the action pursuant to I.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Orrock appeals to this Court.
FACTUAL AND PROCEDURAL BACKGROUND
The complaint generally alleges that members of the Micron board and Micron officers were engaged in a scheme to manipulate the price of Dynamic Random Access Memory (DRAM) products. Orrock brought this derivative action for injuries suffered as a result of breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, and aiding and abetting thereof. Orrock names Steven R. Appleton (Appleton), Wilbur G. Stover, Jr. (Stover), Michael W. Sadler (Sadler), James W. Bagley (Bagley), Robert A. Lothrop (Lothrop), Gordon C. Smith (Smith), William P. Weber (Weber), Thomas T. Nicholson (Nicholson), and Don J. Simplot (Simplot) as defendants in this action. Prior to filing a shareholder derivative action the plaintiff must demand that the board of the corporation take action. A derivative action may not be maintained unless the plaintiff can show that demand would be futile. The district court found that Orrock had failed to sufficiently plead facts showing that demand on the board would have been futile. Therefore, the district court dismissed this action pursuant to I.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted.
The third amended complaint alleged the *615 following facts[1] in relation to whether demand on the board would be futile:
Micron is a manufacturer of memory technology and produces DRAM products. DRAM constitutes 95% of Micron’s revenue. Appleton, Bagley, Lothrop, Smith and Weber served on the Board during the relevant period.[2] These five members constitute a majority of the Board.
A Micron representative, in a 2001 email, stated that Micron would “be increasing prices to all of the [Original Equipment Manufacturer] customers.”
The Department of Justice (DOJ) issued a federal grand jury subpoena to Micron demanding documents relating to the pricing and sales of DRAM chips. In response to the DOJ’s subpoena Appleton, Bagley, Lothrop, Smith and Weber allowed Micron to alter handwritten notes and other documents relating to the pricing and sales of DRAM products. In November of 2004 Appleton responded to the allegations and investigation by publicly stating that it was “not possible to control prices in [the DRAM] industry” and that the DOJ’s investigation was merely “theoretical.” Micron would be subject to billions of dollars in liability for any violations of applicable securities and antitrust laws.
Sadler met with CEO’s of DRAM manufacturing companies and discussed cutting DRAM production. In October 2001, Sadler traveled to Munich, Tokyo, Taiwan and Seoul. Appleton had knowledge of Sadler’s actions. Appleton scheduled a visit to Munich to meet with the CEO’s of Infineon and Samsung regarding cut backs in DRAM production.[3] In June 2002, Appleton, Bagley, Lothrop, Smith and Weber were aware that Micron was likely involved in the DRAM price-fixing conspiracy based on the DOJ’s announcement and investigation into Micron’s role and numerous news articles in the Idaho Statesman, the New York Times, and the Wall Street Journal. The Articles collectively contain the following information: (1) the CEO of Dell Computers blamed the skyrocketing prices of memory chips on “cartel-like behavior by a couple of DRAM suppliers;” (2) industry experts believed the DOJ investigation to be focused on “companies artificially pushing prices up;” (3) Micron was being investigated by a grand jury for anti-competitive practices which implied that criminal charges may follow; (4) Micron cut DRAM supply by 20% between September 2001 and March 2002, which is one of the most dramatic cuts made by a DRAM manufacturer; (5) DRAM prices were on average $1.97 each in the fourth quarter of “last year” and $4.50 each in the first quarter of 2002; (6) the vice president of Mosel-Vitelie “confirmed that his company had reached an agreement with Hynix and Samsung Electronics to push up DRAM prices to $3 a chip by stopping dumping of the chip;” and (7) twenty-six class action lawsuits had been filed naming Micron as a defendant with allegations of secrecy and conspiracy to fix memory prices. Micron’s Board took no investigatory action in response to these allegations by the news sources. Specifically, Appleton, Bagley, Lothrop, Smith and Weber conducted no investigation as to whether any of Micron’s employees were involved in the alleged conspiracy or whether Micron would be subjected to liability if such a conspiracy existed.
Forbes magazine called Appleton the “worst performing boss in America.” Forbes listed Appleton’s annual compensation based on a six-year average at $7.8 million despite an overall decrease in Micron’s stock.
Micron has an on-going business relationship with Lam Research Corporation (Lam) for semiconductor manufacturing equipment and related services. Over a five-year period Micron paid Lam $326.5 million for semiconductor manufacturing equipment and related services. Bagley is the current Executive chairman and former CEO of Lam. Mercedes Johnson (Johnson)[4] served as Senior Vice President of Finance for Lam.
*616 Lothrop, Smith and Simplot were business associates at the J.R. Simplot Company which is an agribusiness company. Lothrop served as Senior Vice President from 1986-1991. Smith served in various management positions from 1980-1994, including three years as President and CEO and seven years as CFO. Simplot served as President of Simplot Financial Corporation from 1985-1992, which is a wholly owned subsidiary of the J.R. Simplot Company. Simplot has also worked for the J.R. Simplot Company since 1955 in various capacities, including director.
Smith had access to internal corporate documents, conversations and other non-public information. While in possession of this information Smith sold 10,000 shares of Micron stock for proceeds of $352,400.[5] On July 20, 2007, Smith made certain accusatory statements to the Idaho Statesman, such as: (1) Micron is in need of new management and potentially a new Board; (2) this “change at the top” should have been made a long time ago; (3) the Board was not prepared to make any necessary changes; (4) the Board is “very passive” and not “well-informed;” (5) if the Board had been more “aggressive” and “inquiring” any damage caused to Micron due to faulty management could have been avoided; (6) Smith was equally at fault for his failure to timely speak out against Appleton and other members of the Board; and (7) the business relationship between Bagley and Lam is so strong that Bagley would not speak out against Appleton. On July 25, 2007 Smith resigned from the Micron Board.
The Governance and Compensation Committee at Micron reviews and approves the CEO’s compensation. This Committee is responsible for: (1) evaluating director and Board committee member compensation, (2) recommending the appropriate level of director compensation, (3) reviewing and approving corporate goals and objectives relevant to the CEO’s compensation, (4) evaluating the CEO’s performance in light of the goals and objectives, (5) determining the CEO’s compensation level, (6) reviewing performance of the individual directors, (7) determining whether a director should be nominated for an additional term, and (8) oversight of the Board’s evaluation of it’s performance and the performance of management. Lothrop and Weber consist of two-thirds of the Governance and Compensation Committee.
The Audit Committee is responsible for, (1) conducting a quarterly review of the Company’s system of internal controls, and (2) periodically reviewing, along with Micron’s General Counsel, Micron’s compliance with legal and regulatory requirements. Lothrop, Smith and Weber were all members of the Audit Committee at some point during the relevant period.[6]
Smith and Weber have received an additional $10,000 in compensation for holding positions as chairmen of the Audit Committee and Governance and Compensation Committee. Bagley, Lothrop, Smith and Weber each receive an annual retainer of $50,000.[7]
Appleton is primarily employed by Micron. Over a five-year period Micron paid Appleton $1,268,128 in bonus compensation, $2,696,114 in salary, $851,900 in restricted stock awards and granted Appleton options to purchase 2,350,000 shares of stock. Compensation for Appleton is determined by the Governance and Compensation Committee.
Orrock further alleged that demand on the individual shareholders of Micron would be futile because, (1) Micron is a publicly held company with over 618 million shares outstanding, (2) such demand would be impossible because Orrock has no means to discover names, addresses or phone numbers of the shareholders, and (3) regardless if the shareholders could be discovered, demand would cause Orrock a huge expense.
Orrock then alleges the following conclusions follow from the above stated facts:
*617 Demand on Appleton, Bagley, Lothrop, Smith and Weber would be futile because they each face a substantial likelihood of liability for their breaches of fiduciary duties to Micron as a result of their involvement and conduct relating to the price-fixing conspiracy. Each of the above directors knew or consciously ignored Micron’s role in the DRAM price-fixing conspiracy and took no action to prevent liability on behalf of Micron, thereby subjecting the named directors to personal liability. As information developed as to the existence of a DRAM price-fixing scheme the above named directors failed to investigate if employees were involved and failed to mitigate any damages on behalf of Micron.
Demand on Lothrop, Smith and Weber would be futile because they would be subjected to liability pursuant to their roles on the Audit Committee. The members of the Audit Committee may be subject to liability for breach of fiduciary duties of due care, loyalty and good faith because the Audit Committee failed to take action or prevent directors, officers or employees from engaging in DRAM price-firing.
Demand on Appleton, Bagley and Smith would be futile because they lack independence from Lothrop and Weber; as members of the Governance and Compensation Committee Lothrop and Weber determine each director's salary. Appleton, Bagley and Smith lack independence because it would jeopardize their personal financial compensation.[8] Demand on Bagley, Lothrop, Smith and Weber would be futile because they lack independence because of their interest in maintaining their positions on the Board and to preserve their substantial compensation.
Demand on Bagley would be futile because he lacks independence in evaluating Appleton’s behavior because of Bagley’s business involvement with Lam and Lam’s business relationship with Micron.
Demand on a majority of the Board, that is Appleton, Bagley, Lothrop, Smith and Weber, would be futile because they have not exercised independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome because their actions have subjected Micron to liability, thereby subjecting themselves to personal liability. The above individuals, due to their inter-related business, professional and personal relationships, have conflicts of interest that prevent the Board from taking action on behalf of Micron.
ISSUE ON APPEAL
Whether the district court erred in granting defendant’s motion to dismiss pursuant to I.R.C.P. 12(b)(6).
STANDARD OF REVIEW
Both parties state that Delaware law applies in this case because Delaware is the state of incorporation for Micron. See Kamen v. Kemper Fin. Services, Inc., 500 U.S. 90, 101, 111 S.Ct. 1711, 114 L.Ed.2d 152, 167 (1991) (holding that the law of the state of incorporation generally governs the internal matters and governance of a corporation and that whether demand is required relates directly to the internal governance of the corporation); See also Sword v. Sweet, 140 Idaho 242, 246, 92 P.3d 492, 496 (2004) (one of the factors used to determine the proper choice of law for contracting parties would be the state of incorporation). However, the parties go a step further and state that Delaware employs a de novo review, and that is the appropriate standard of review for this case.[9] This Court declines to apply a foreign jurisdiction’s procedural law regardless if we are applying that jurisdiction’s substantive law. See Sword, 140 Idaho at 247, 92 P.3d at 497 (where this Court applied Idaho’s standard of review to the procedural aspect of the claim and Indiana’s law for the substantive portions of the claim). Therefore, Idaho *618 law will dictate the procedural aspects of this ease and Delaware law applies to the substantive claims.
“[T]he following defenses shall be made by motion: ... (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted[J” I.R.C.P. 12(b)(6). “In reviewing a ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the question is whether the non-movant has alleged sufficient facts in support of his claim, which if true, would entitle him to relief.” Rincover v. Dep't of Fin., 128 Idaho 653, 656, 917 P.2d 1293, 1296 (1996). This Court makes “every reasonable intendment” in order to “sustain a complaint against a motion to dismiss for failure to state a claim.” Idaho Comm’n on Human Rights v. Campbell, 95 Idaho 215, 217, 506 P.2d 112, 114 (1973). In a derivative action “[t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action which plaintiff desires from the directors ... and the reasons for the plaintiffs failure to obtain the action or for not making the effort.” I.R.C.P. 23(f) (emphasis added).
ANALYSIS
The district court did not err in granting defendant’s motion to dismiss pursuant to I.R.C.P. 12(b)(6).
A stockholder’s derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.
McCann v. McCann, 138 Idaho 228, 233, 61 P.3d 585, 590 (2002) (quoting 19 Am.Jur.2d Corporations § 2250, 151-52 (1986)). “To prevent abuse of [a shareholder derivative suit] ... equity courts established as a precondition ‘for the suit’ that the shareholder demonstrate ‘that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.’ ” Kamen, 500 U.S. at 95-96, 111 S.Ct. at 1719, 114 L.Ed.2d at 163 (quoting Ross v. Bernhard, 396 U.S. 531, 534, 90 S.Ct. 733, 735, 24 L.Ed.2d 729, 733 (1970)). The demand requirement “affords the directors an opportunity to exercise their reasonable business judgment[.]” Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 533, 104 S.Ct. 831, 836, 78 L.Ed.2d 645, 653 (1984). “[T]he function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of ‘substance,’ not ‘procedure.’ ” Kamen, 500 U.S. at 96-97, 111 S.Ct. at 1716-1717, 114 L.Ed.2d at 163-164.
Any factual allegations will be accepted as true, unless they are purely conclusory. Rales v. Blasband, 634 A.2d 927, 931 (Del.1993). The test in a shareholder derivative action is whether the plaintiff alleged “particularized facts to creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand.” Id. at 930. To determine whether demand is futile the court must decide “whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.” Brehm v. Eisner, 746 A.2d at 253-54 (citing Aronson v. Lewis, 473 A.2d 805, 814 (Del.1984) (overruled on other grounds)).
Accepting all the facts alleged as true, Orrock insufficiently pled that demand on a majority of the Board at Micron would be futile. The facts generally show that Appleton has a significant financial interest at stake in the matter and may be subjected to personal liability for his failure to act in light of allegations of Micron’s involvement in price-fixing. However, there are insufficient facts which tend to show that a majority of the other board members had knowledge of any DRAM price-fixing among DRAM manufacturers as reported in the news sources, that any of the board members consciously disregarded any of the “red flags,”[10] or that *619 the Board members failed to investigate or take remedial action.[11]
Orrock did not request access to the books and records of Micron to investigate whether information existed within the company records which may tend to support his allegations. A simple request for access to the company records might have indicated whether an investigation was in fact conducted by Micron’s board or information was ignored by Micron’s board, or whether Micron’s board refuses access to the company records. The complaint was insufficient to withstand an I.R.C.P. 12(b)(6) motion for failure to state a claim upon which relief may be granted. Shareholder derivative actions require the plaintiff to plead with particularity; Orrock’s third amended complaint insufficiently pled that demand on the Board would be futile.
CONCLUSION
For the foregoing reasons, this Court affirms the decision of the district court. Costs to Respondent.
Chief Justice EISMANN, Justices BURDICK and HORTON concur.

. Any conclusory statements are not listed in order to evaluate whether sufficient facts were pled to support the allegation that demand on the board would have been futile.

. The "Relevant Period” is defined as February 2001 to the present.

. The wording in the complaint indicates that this trip never occurred.

. Johnson was a board member at the time this complaint was filed, but not a named defendant in the action.

. Smith is one of the named directors accused by Orrock of engaging in illegal insider selling for proceeds obtained from the sale of Micron stock.

. Orrock cites Micron's Proxy Statement as filed with the SEC as the source of this information.

. The pleadings do not indicate the purpose of this retainer.

. In the complaint, Orrock lists the names of all the members of the Board who served at any point during the Relevant Period. To prevent confusion, this opinion only discusses the members of the board named as defendants.

. Delaware does review the sufficiency of the pleadings in a stockholder derivative action de novo. Brehm v. Eisner, 746 A.2d 244, 253 (Del.2000).

. Orrock repeatedly referred to the "red flags” that should have warranted an investigation by *619 the board as to whether Micron was engaged in any DRAM price-fixing scheme. Those "red flags” consist of the newspaper articles, the DOJ investigation, and various other statements made to the public.

. Orrock alleges that the Board failed to investigate or take remedial action but does not state what, if any, action he took to discover what the Board may or may not have done in either regard.