# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51625

GRETCHEN HYDE, an individual, and as limited partner of the DAVID LITTLE FAMILY LIMITED LIABILITY PARTNERSHIP, an Idaho limited liability partnership; and DINAH REANEY, an individual, and as limited partner of the DAVID LITTLE FAMILY LIMITED LIABILITY PARTNERSHIP, an Idaho limited liability partnership,

    Plaintiffs-Appellants,

v.

ROBERT and ROCHELLE OXARANGO, husband and wife; ROBERT and ROCHELLE OXARANGO, Trustees of the Oxarango Family Trust U/T/A dated April 1, 2015; and OXARANGO RANCH, LLC, an Idaho limited liability company,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2025 Term

Opinion Filed: June 9, 2026

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED FEBRUARY 20, 2026, IS HEREBY WITHDRAWN.

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem County. Brent L. Whiting, District Judge.

The decision of the district court is <u>affirmed</u>.

Jones Williams Furhman Gourley, P.A., Boise, for Appellants, Gretchen Hyde and Dinah Reaney. Daniel Williams argued.

Varin Thomas, Boise, for Respondents, Robert and Rochelle Oxarango. J. Will Varin argued.

---

MEYER, Justice.

This appeal concerns a dispute over a family farm and the district court's order dismissing the ensuing complaint. Rochelle Oxarango, Gretchen Hyde, and Dinah Reaney are sisters and owners of a family farming and ranching business that is managed in a limited partnership. Oxarango and her husband, Robert Oxarango, are general partners along with the sisters' father, James Little. Hyde and Reaney are limited partners. Hyde and Reaney sued the Oxarangos,

1

asserting derivative and direct claims relating to breach of fiduciary duty and sought expulsion of the Oxarangos as general partners. For the reasons discussed below, we affirm the district court's dismissal of Hyde's and Reaney's complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

For the last thirteen years, James and Jan Little (the "Littles") have gradually transferred assets and control over the family farm and ranching business to their daughter, Rochelle Oxarango, and her husband Robert (the "Oxarangos"). The family farm and ranching business is managed by the David Little Family Limited Partnership (the "Family Limited Partnership"), while other farm and ranching business assets are held by two entities: Van Deusen Ranch, Inc. and V Dot Cattle Company LLLP ("the entities"). At various times, the Littles, the Oxarangos, and two other of the Littles' daughters, Gretchen Hyde and Dinah Reaney ("Hyde/Reaney"), owned shares in the entities.

Examples of these transfers included a deal in 2012, when James Little negotiated for Hyde/Reaney to sell their shares in Van Deusen Ranch and V Dot Cattle Company to Robert Oxarango at a discounted price. Similarly, in early 2015, the Littles sold their 493 shares in Van Deusen Ranch, Inc., to the Oxarangos at a discounted price to be paid over ten years. In April 2015, James Little gratuitously assigned 20 of the 40 total general partnership units of the Family Limited Partnership to the Oxarangos, while retaining 20 for himself, making the Oxarangos general partners and effectively conveying 50% control of the partnership to the Oxarangos.

After the Oxarangos became general partners, James Little and the Oxarangos executed two option agreements, which provided that at James Little's death, the Oxarangos had the right to purchase his interests in V Dot Cattle Company and his general partnership units in the Family Limited Partnership for $10 each.

In August 2015, the Oxarangos, individually or through their entities, the Oxarango Family Trust and the Oxarango Ranch, LLC, purchased grazing land near Donnelly, Idaho. This land was near property owned by James Little, referred to as the "Roseberry Property," which he used for grazing cattle. In 2017, the Oxarangos, individually or through their entities, purchased additional grazing land in the same area. In 2020, the Oxarangos, individually or through their entities, purchased the Roseberry Property from James Little.

Three years later, on August 9, 2023, Hyde/Reaney filed a lawsuit against the Oxarangos, individually and in their roles as Trustees of the Oxarango Family Trust, claiming that the

Oxarangos breached their fiduciary duties as general partners in the Family Limited Partnership by purchasing shares in various entities from James Little over time at a discounted price. Specifically, they challenged transactions that occurred in 2015 and 2017, which resulted in the Oxarangos obtaining greater control over the Family Limited Partnership and a greater ownership share of the family farm and ranch business. Hyde/Reaney also claimed the Oxarangos usurped a business opportunity from the Family Limited Partnership when they purchased the Roseberry Property in 2020 from James Little through "wrongful and inequitable conduct." Hyde/Reaney indicated in their complaint that they were bringing direct actions against the Oxarangos individually and in their capacity as general partners in the Family Limited Partnership. Hyde/Reaney also pleaded derivative actions as limited partners on the same basis and claimed "demand futility" (the right to bypass certain preliminary procedures in a derivative action based on the futility of a demand on the entity to bring the action on its own behalf) because the Oxarangos "effectively control 50% of the general partnership powers." Hyde/Reaney sought damages in an amount to be proven at trial and the expulsion of the Oxarangos as general partners in the Family Limited Partnership. They also sought attorney fees under Idaho Code sections 12-120(3) and 12-121.

The Oxarangos filed a motion to dismiss under Idaho Rule of Civil Procedure 12(b)(6) as well as a motion to strike portions of the pleadings and a motion for a more definite statement. With respect to the alleged breaches of fiduciary duty related to transactions that took place in 2015 and 2017, the Oxarangos asserted Hyde/Reaney's complaint was barred by the statute of limitations. The Oxarangos also maintained that Hyde/Reaney could not bring a direct action based on these transactions because they could not show personal damages, only damage to the Family Limited Partnership. As a result, the Oxarangos argued that Hyde/Reaney's claims should be construed as derivative actions, which failed because Hyde/Reaney never made a demand upon the general partners to bring an action on behalf of the partnership nor did they properly plead demand futility.

With respect to the 2020 purchase of the Roseberry Property, the Oxarangos argued that Hyde/Reaney could not show that the Oxarangos had usurped a business opportunity of the Family Limited Partnership when they purchased the Roseberry Property. The Oxarangos also contended that Hyde/Reaney could not show personal damages sufficient to bring a direct action. Further, the Oxarangos asserted that Hyde/Reaney lacked standing to bring derivative actions because they did

not make a demand on the general partners before filing the action or adequately plead demand futility.

The district court granted the Oxarangos' motion to dismiss the complaint for failure to state a claim for relief under Rule 12(b)(6). In its decision, the district court determined that Hyde/Reaney's breach of fiduciary duty claims related to the 2015 option agreements and the 2017 acquisition of property in Donnelly were barred by the statute of limitations and should be dismissed. It determined that Hyde/Reaney "were at least generally aware" by 2012 that "transfers of ownership to [the Oxarangos] were occurring, and that [the Oxarangos] desired greater shares of the ranch assets." It noted that Hyde/Reaney held interests in the Family Limited Partnership "possibly as early as 1996" and interests "in V Dot and Van Deusen were bought by [the Oxarangos] in 2012." It also noted that James Little remained a general partner of the Family Limited Partnership "throughout these transactions," and that nothing suggested he was "otherwise unavailable as a resource to [Hyde/Reaney] given that the [c]omplaint alleges that he continued to engage in transactions with [the Oxarangos]." In viewing these facts collectively, the district court ultimately concluded that the complaint was deficient, because "the affirmative defense of the statute of limitations and the discovery exception [were] clear from the face of the [c]omplaint."

With regard to the Roseberry Property transaction, the district court concluded that Hyde/Reaney could not show injury in fact under either a direct or a derivative claim. The court noted that Hyde/Reaney's complaint described the Roseberry Property as "prime development land," but that development was not a stated purpose of the Family Limited Partnership, nor was it clear that the Family Limited Partnership had ever purchased additional, business-related property. In terms of potential injury to the partnership, the court viewed the transaction merely as property passing from one general partner to another. Additionally, the court stated that the Roseberry Property was owned personally by the Littles, who were free to "do with the property what they wanted," which in this case was to sell to the Oxarangos. On these bases, the court concluded that Hyde/Reaney did not suffer injury sufficient to establish standing to challenge the Roseberry Property transaction.

Finally, the district court analyzed Hyde/Reaney's claim for expulsion of the Oxarangos as general partners of the Family Limited Partnership. This claim arose from the same bases as their claims for usurping a partnership opportunity or wrongful competition: the 2015 option agreements, the 2017 Donnelly property transaction, and the 2020 Roseberry Property transaction.

4

The district court concluded that Hyde/Reaney's factual allegations were insufficient to show "a partnership opportunity to usurp or misappropriate in the first place" because there was no allegation that acquiring the Roseberry Property was "in line" with the Family Limited Partnership's "actual conduct of business," nor did the court perceive how obtaining the property would have any practical effect on the partnership, as the property was already being used to graze the ranch's cattle. Accordingly, the district court concluded that Hyde/Reaney failed to plead sufficient facts to support their claims of expulsion. Hyde/Reaney appeal.

## II.    STANDARD OF REVIEW

The district court dismissed Hyde/Reaney's complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) "allows a court to dismiss a claim if the plaintiff 'fail[s] to state a claim upon which relief can be granted[.]'" *McCreery v. King*, 172 Idaho 598, 603, 535 P.3d 574, 579 (2023) (alterations in original) (quoting I.R.C.P. 12(b)(6)). "This Court reviews a district court's dismissal of a complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6) *de novo*." *Geringer Cap. v. Taunton Props., LLC*, 172 Idaho 95, 100, 529 P.3d 760, 765 (2023) (citing *Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 300, 520 P.3d 708, 712 (2022)).

> A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated. On review of a dismissal, this Court determines whether the non-movant has alleged sufficient facts in support of his claim, which if true, would entitle him to relief. In doing so, the Court draws all reasonable inferences in favor of the non-moving party.

*McCreery*, 172 Idaho at 603, 535 P.3d at 579 (quoting *Fulfer*, 171 Idaho at 300, 520 P.3d at 712). "[C]ourts are not required, however, to deem legal conclusions as admitted merely because they were plead [sic] as factual allegations." *Id.* (alterations in original) (quoting *CMJ Props., LLC v. JP Morgan Chase Bank, N.A.*, 162 Idaho 861, 863, 406 P.3d 873, 875 (2017)).

However, it is well established that "justiciability challenges, including those related to standing, are subject to Idaho Rule of Civil Procedure 12(b)(1) since they implicate jurisdiction." *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 776, 405 P.3d 33, 35 (2017) (citation modified); *see also Stasiewicz v. Henry's Lake Vill., LLC*, ___ Idaho ___, ___, 582 P.3d 44, 56 (2026). "Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review." *Friends of Minidoka v. Jerome County* (*In re Jerome Cnty. Bd. of Comm'rs*), 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012). Despite the different applicable rule, our standard of review is the same because the Oxarangos presented a facial challenge to Hyde/Reaney's standing.

"There is a distinction between 12(b)(1) *facial* challenges and 12(b)(1) *factual* challenges." *Emps. Res. Mgmt. Co.*, 162 Idaho at 776–77, 405 P.3d at 35–36 (quoting *Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 133 n.1, 106 P.3d 455, 459 n.1 (2005)).

> "A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true." 5B *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1350 (4th ed.). "Facial challenges provide the non-movant the same protections as under a 12(b)(6) motion; thus, they are reviewed under the same standard." [*Von Lossberg v. State*, 170 Idaho 15, 19, 506 P.3d 251, 255 (2022)] (internal quotation marks omitted).
>
> A factual challenge, on the other hand, "attacks the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts." 5B *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1350 (4th ed.). In that instance, a court "may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

*Stasiewicz*, ___ Idaho at ___, 582 P.3d at 56. Here, the Oxarangos did not submit extrinsic evidence to challenge the facts alleged in the complaint. Therefore, we apply the same standard as if the motion to dismiss were governed by Idaho Rule of Civil Procedure 12(b)(6).

### III.    ANALYSIS

**A.  The district court did not err when it dismissed Hyde/Reaney's derivative and direct claims because Hyde/Reaney lacked standing.**

As indicated above, the district court bifurcated its analysis of Hyde/Reaney's claims by discussing the 2015 option agreements and the 2017 land sale together—i.e., the "pre-Roseberry" Property transactions—and the 2020 Roseberry Property transaction separately. The district court determined that the 2015 and 2017 transactions were barred by the statute of limitations and dismissed them.

Regarding the 2020 Roseberry Property transaction, the district court dismissed Hyde/Reaney's derivative and direct claims of breach of fiduciary duty against the Oxarangos for lack of standing. Specifically, the district court concluded that Hyde/Reaney failed to establish injury in fact. Hyde/Reaney argued that the Roseberry Property represented a business opportunity for the Family Limited Partnership, which was taken by the Oxarangos for their personal use in violation of their duty to the partnership. The district court, however, determined that the stated injury was "conjectural or hypothetical" because it viewed the Roseberry Property transaction as merely "a change in ownership of a personally owned piece of property from one general partner to another." The district court also noted that the Roseberry Property was described as "prime

development land," and development was not a stated purpose of the Family Limited Partnership. The district court also concluded that it was unclear whether the Family Limited Partnership acquired property as part of its regular business, such that "an acquisition such as this [would have been] very unusual for [the Family Limited Partnership]."

On appeal, Hyde/Reaney argue that the district court did not apply the "appropriate legal framework" to the standing analysis and incorrectly inferred facts against Hyde/Reaney, the non-moving parties. Hyde/Reaney also argue that the pleading requirements in the Idaho Uniform Limited Partnership Act ("IULPA") apply, were satisfied by their complaint, and that their compliance with IULPA provisions conferred standing to bring suit.

The Oxarangos assert that Hyde/Reaney did not show injury sufficient to establish standing to bring their direct claims because they cannot show a special injury distinct from other shareholders, as the law requires. Further, the Oxarangos argue that Hyde/Reaney's pleadings did not meet the derivative claim requirements set forth in IULPA, specifically Idaho Code sections 30-24-902 and 30-24-904, which require, in part, that a demand be made on general partners of a limited partnership before a derivative action is filed, and that details related to the demand date and the general partner's response be contained within the complaint.

While the district court granted the Oxarangos' motion to dismiss on statute of limitations grounds related to the 2015 and 2017 transactions, and claims related to the Roseberry Property based on the merits of Hyde/Reaney's allegations, we affirm the court's judgment dismissing Hyde/Reaney's complaint on purely partnership standing grounds and will address the claims relating to the various transactions together. It is appropriate to first determine whether Hyde/Reaney have standing to bring their derivative and direct claims before addressing the merits of those claims. *Reclaim Idaho v. Denney*, 169 Idaho 406, 418, 497 P.3d 160, 172 (2021) ("Standing is a threshold determination by this Court before reaching the merits of the case."); *see also Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002).

"[A] person wishing to invoke a court's jurisdiction must have standing." *Young*, 137 Idaho at 104, 44 P.3d at 1159. "Concepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court." *Reclaim Idaho*, 169 Idaho at 418, 497 P.3d at 172 (quoting *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015)). "Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Young*, 137 Idaho at 104, 44 P.3d at 1159 (citations omitted). "To establish standing,

a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Homes & Neighborhoods, LLC v. Mountain Air Resort, LLC*, 174 Idaho 742, 744, 560 P.3d 485, 487 (2024) (quoting *Radford v. Van Orden*, 168 Idaho 287, 299, 483 P.3d 344, 356 (2021)). "To establish injury in fact, a party is required to show a 'distinct palpable injury.'" *Id.* at 745, 560 P.3d at 488 (quoting *Tidwell v. Blaine County*, 172 Idaho 851, 859, 537 P.3d 1212, 1220 (2023)).

### 1. Derivative claims

When a partner in a limited partnership believes that the limited partnership has a claim to enforce a right of the partnership, the partner may bring a derivative claim to enforce the right of the limited partnership if certain conditions are met, as we explain below. *See* I.C. § 30-24-902.

Idaho Code section 30-24-902 allows partners in a limited partnership to bring a derivative action against the partnership, provided:

> (1) The partner first makes a demand on the general partners, requesting that they cause the partnership to bring an action to enforce the right, and the general partners do not bring the action within a reasonable time; or
>
> (2) A demand under subsection (1) of this section would be futile.

I.C. § 30-24-902. Further, Idaho Code section 30-24-904 requires:

> In a derivative action, the complaint must state with particularity:
>
> (1) The date and content of the plaintiff's demand and the response to the demand by the general partner[s]; or
>
> (2) Why the demand should be excused as futile.

I.C. § 30-24-904.

In their complaint, Hyde/Reaney asserted that "demand on the general partners of the Family Limited Partnership to maintain this action is futile" because the Oxarangos "effectively control 50% of the general partnership powers." This bald conclusion was the only evidence offered to show compliance with the pleading requirements in Idaho Code sections 30-24-902 and 30-24-904 and is insufficient to meet those requirements. Hyde/Reaney failed to plead with particularity why a demand on all the general partners would be futile as required by Idaho Code section 30-24-904(2). There is no factual foundation for this conclusion.

This Court has discussed the important policy considerations underlying the demand requirement, in the context of corporate shareholder derivative suits. *Kugler v. Nelson*, 160 Idaho

408, 415, 374 P.3d 571, 578 (2016); *Orrock v. Appleton*, 147 Idaho 613, 618, 213 P.3d 398, 403 (2009).

> To prevent abuse of a [shareholder derivative suit] . . . equity courts established as a precondition for the suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions. The demand requirement affords the directors an opportunity to exercise their reasonable business judgment[.] [T]he function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of substance, not procedure.

*Orrock*, 147 Idaho at 618, 213 P.3d at 403 (alterations in original) (internal quotation marks and citations omitted). The statutory demand requirement serves a similar function in limited partnership derivative suits. Thus, as in the corporate context, in order for partnership derivative suits "to survive a motion to dismiss, it [is the plaintiff's] obligation to *particularly allege* the efforts he made to obtain the action which he desired from the directors and the reasons for his failure to obtain the action." *Id.* at 620, 213 P.3d at 405 (Jones, J., concurring) (emphasis added).

In their briefing, Hyde/Reaney argue that several facts included in their complaint point to the conclusion that demand on the partners would be futile. However, recitation of the transactions between parties and allegations of misuse of business funds do not explain why a demand on all general partners would be futile. Section 30-24-904(2) requires the complaint to "state with particularity . . . [w]hy the demand should be excused as futile." I.C. § 30-24-904(2). Because Hyde/Reaney failed to plead with particularity in accordance with Idaho Code section 30-24-904(2), we affirm the district court's dismissal of their derivative claims on the basis that they lack standing to bring their derivative claims. *A.C. & C.E. Invs., Inc. v. Eagle Creek Irrigation Co.*, 173 Idaho 252, 260–61, 540 P.3d 349, 357–58 (2023) ("The failure of a plaintiff to comply with [derivative suit] pleading requirements is grounds for dismissal.").

### 2. *Direct claims*

Idaho Code section 30-24-901(a) allows a partner to "maintain a direct action against another partner or the limited partnership . . . to enforce the partner's rights and protect the partner's interests. . . ." I.C. § 30-24-901(a). Section 30-24-901(b), however, requires that the partner bringing such an action "plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." I.C. § 30-24-901(b).

9

In support of their direct claims, Hyde/Reaney assert that they were personally injured by each of the transactions described above as well as by misappropriation of partnership funds by the Oxarangos. They assert that the Oxarangos' conduct thwarted James Little's plan for equal distribution of partnership assets to his daughters "through both the deprivation of business opportunities" and by "acquiring much of the family business through the other two entities." Essentially, they argue that their rights and status as heirs makes their injury distinct from any injury to the partnership. For the first time on appeal, Hyde/Reaney argue that they were owed a special duty as family members of the general partners in addition to the fiduciary duty the Oxarangos owed as general partners.

The Oxarangos argue that Hyde/Reaney did not have standing because they did not suffer an injury distinct from injuries "suffered or threatened to be suffered by the limited partnership," as required by Idaho Code section 30-24-901(b). They assert that Hyde/Reaney as heirs did not suffer injury distinct from the partnership because "an inheritance is an expectancy, not a vested right, and Idaho does not recognize a cause of action for intentional interference with an expected inheritance." Further, they argue that there is no support in the law for a "special" duty for family members over and above a fiduciary duty already owed.

As we stated above, Idaho Code section 30-24-901(b) requires that "[a] partner maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." I.C. § 30-24-901(b). Here, Hyde/Reaney did not adequately plead an injury to themselves distinct from an injury to the partnership.

The Official Comment to section 30-24-901(b) provides a helpful explanation of the "rule of standing that predominates in entity law." I.C. § 30-24-901 cmt. subsection (b).

> Although in ordinary contractual situations it is axiomatic that each party to a contract has standing to sue for breach of that contract, within a limited partnership different circumstances typically exist. A partner does not have a direct claim against a general partner merely because the general partner has breached the partnership agreement. Likewise a general partner's violation of this article does not automatically create a direct claim for every other partner. To have standing in his, her, or its own right, a partner plaintiff must be able to show a harm that occurs independently of the harm caused or threatened to be caused to the limited partnership.
>
> EXAMPLE: Through grossly negligent conduct, in violation of [section 30-24-409(c)], the general partner of a limited partnership reduces the net assets of the limited partnership by fifty percent, which in turn[] decreases

10

the value of Limited Partner A's investment by $3,000,000. A has no standing to bring a direct claim; the damage is merely derivative of the damage first suffered by the limited partnership. The partner may, however, bring a derivative claim.

*Id.*

Hyde/Reaney's complaint contains general factual allegations reciting the history of the various family farming and ranching entities; their father, James Little's, health issues; his desire to divide his and his wife's assets equally among the three daughters (Hyde, Reaney, and Oxarango); and the transactions that occurred after 2012 resulting in greater ownership of assets in the Oxarangos. The general fact section of the complaint also alleges: "Further, based on information and belief, [the] Oxarango[s] have utilized Van Deusen funds for personal purposes." Nothing more is said on the matter.

The first cause of action in the complaint is for breach of the fiduciary duty of loyalty by appropriation of partnership opportunities. In it, Hyde/Reaney claim breach of fiduciary duties to themselves as limited partners and to the Family Limited Partnership by the Oxarangos under Idaho Code section 30-24-409(b)(1)(C) related to the 2015, 2017, and Roseberry Property transactions.

Hyde/Reaney's second cause of action is for breach of the fiduciary duty of loyalty by wrongful competition. In it, they claim that the Oxarangos breached their fiduciary duty of loyalty and care to themselves and to the Family Limited Partnership by competing with the Family Limited Partnership through the Oxarango entities.

The third cause of action is for expulsion as general partners. In it, Hyde/Reaney claim that all of the described transactions represented partnership opportunities of the Family Limited Partnership; that the Oxarangos engaged in wrongful conduct that adversely and materially affected the partnership's business; that the Oxarangos committed a material breach of the Partnership Agreement or a duty or obligation under Idaho Code section 30-24-409 (relating to fiduciary duties); and that the Oxarangos engaged in conduct making it not reasonably practicable to carry on the Family Limited Partnership's activities and affairs with the Oxarangos as general partners.

On appeal, Hyde/Reaney claim that their direct claims center on injury to their inheritance expectations and breach of a "special" duty between family members. While their complaint

alludes to James Little's desires that the Littles' assets be distributed equally among their daughters at their deaths, the complaint does not refer to a special duty between family members.

With respect to injuries to Hyde/Reaney as heirs, they have no legally cognizable inheritance rights in property owned by a living relative. *Nelsen v. Nelsen*, 170 Idaho 102, 133, 508 P.3d 301, 332 (2022) ("[A] prospective beneficiary has a mere expectancy that is subject to defeasance at the donor's whim. . . . [This expectancy] does not harden into a cognizable legal right until the donor's death." (quoting Robert H. Sitkoff, *Trusts and Estates: Implementing Freedom of Disposition*, 58 St. Louis U. L.J. 643, 644 (2014))). At this juncture, Hyde/Reaney have merely an expectation of an inheritance, but no rights to the same. Thus, the claimed injury to their rights as heirs does not state a legally cognizable claim.

We are similarly unpersuaded by Hyde/Reaney's argument that their injury is due to a breach of a "special" duty owed by the Oxarangos because they are family members. They cite two cases for this proposition: *Doe v. Boy Scouts of America*, 159 Idaho 103, 356 P.3d 1049 (2015), and *Skinner v. U.S. Bank Home Mortgage*, 159 Idaho 642, 365 P.3d 398 (2016). *Doe* involved a certified question from the United States District Court for the District of Idaho dealing with the statute of limitations for constructive fraud allegations. *Doe*, 159 Idaho at 104–05, 356 P.3d at 1050–51. In the context of that discussion, this Court defined constructive fraud and went on to discuss instances in which the law will impose "fiduciary obligations" on parties who have close relationships, such as "when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends." *Id.* at 109, 356 P.3d at 1055 (citation modified). This is the language used by Hyde/Reaney to support their claim.

Notably, however, *Doe* discusses instances in which the law imposes a fiduciary duty in circumstances where a "relationship of trust and confidence exists" but where fiduciary obligations do not ordinarily exist. Such is not the case here. The Oxarangos, by virtue of being general partners in the Family Limited Partnership, owed a fiduciary duty to the limited partners of that partnership. Idaho Code section 30-24-409 provides that a general partner "owes to the limited partnership and, subject to section 30-24-901, Idaho Code, the other partners," I.C. § 30-24-409(a), the fiduciary duty of loyalty:

(1) To account to the limited partnership and hold as trustee for it any property, profit or benefit derived by the general partner:

(A) In the conduct or winding up of the partnership's activities and affairs;

12

(B) A use by the general partner of the partnership's property; or

(C) From the appropriation of a partnership opportunity;

(2) To refrain from dealing with the partnership in the conduct or winding up of the partnership's activities and affairs as or on behalf of a person having an interest adverse to the partnership; and

(3) To refrain from competing with the partnership in the conduct or winding up of the partnership's activities and affairs.

I.C. § 30-24-409(b). *Doe* does not stand for the proposition that an independent family member duty applies *in addition* to a fiduciary duty, or that a fiduciary duty is heightened merely because the parties are family members.

Similarly, *Skinner* does not stand for the creation or recognition of an additional "special" fiduciary duty owed to family members. *Skinner* mentioned the types of relationships that could give rise to the imposition of a fiduciary duty, but it did not declare the existence of an additional, "special" family member fiduciary duty, or require that we recognize one. *See* 159 Idaho at 647–48, 365 P.3d at 403–04.

Separate from Hyde/Reaney's claimed injury to their inheritance rights and "special" family member fiduciary duty, Hyde/Reaney failed to describe an injury to themselves separate and distinct from an injury to the limited partnership. As stated in the comment to Idaho Code section 30-24-901(b), "[t]o have standing in his, her, or its own right, a partner plaintiff must be able to show a harm that occurs independently of the harm caused or threatened to be caused to the limited partnership." I.C. § 30-24-901 cmt. subsection (b). For these reasons, we conclude that Hyde/Reaney's claims of injury are not sufficiently distinct to satisfy standing requirements for a direct action as stated in Idaho Code section 30-24-901(b).

**B. Hyde/Reaney's expulsion claim also fails.**

After dismissing their breach of fiduciary duty claims, the district court reached the merits of Hyde/Reaney's claim to expel the Oxarangos as general partners. It ultimately concluded that Hyde/Reaney's pleading did not contain sufficient allegations of wrongful conduct by the Oxarangos to expel them as general partners of the limited liability limited partnership. Accordingly, the court dismissed Hyde/Reaney's expulsion claim for failure to state a claim upon which relief could be granted.

On appeal, Hyde/Reaney argue that the district court did not consider all their allegations in its decision and that the court disregarded Idaho's notice pleading standard in its analysis. The

Oxarangos assert that Hyde/Reaney's expulsion claims were conclusory and lacked sufficient factual basis for their assertions of wrongful conduct or material breach of the partnership agreement, requirements of Idaho Code section 30-24-603(5), even under Idaho's lenient notice pleading standard. For the reasons stated below, we conclude that Hyde/Reaney could not sustain their claim for expulsion under Idaho Code section 30-24-603(5).

In analyzing Hyde/Reaney's claim for expulsion of the Oxarangos as general partners of the Family Limited Partnership, it is useful to review Hyde/Reaney's third cause of action, labeled "Expulsion as General Partners." The third cause of action for expulsion contains six paragraphs, the first of which incorporates all preceding paragraphs of the complaint by reference, and the last of which concludes that the Oxarangos should be "expelled from their role as general partners of the Family Limited Partnership."

The remaining four paragraphs state:

55. All of the transactions described above beginning April 1, 2015, if valid and enforceable, represented partnership opportunities of the Family Limited Partnerships.

56. As alleged above, [the Oxarangos] have engaged and continue to engage in wrongful conduct that has affected adversely and materially, or will affect adversely and materially, the partnership's business pursuant to Idaho Code § 30-24-603(5)(A).

57. In addition, as alleged above, pursuant to Idaho Code § 30-24-603(5)(B), [the Oxarangos] have willfully and/or persistently committed a material breach of the Partnership Agreement and/or a duty or obligation under the analogous duties set forth at Idaho Code § 30-24-409.

58. In addition, as alleged above, pursuant to Idaho Code § 30-24-603(5)(C), [the Oxarangos] have engaged and continue to engage in conduct relating to the Family Limited Partnership's activities and affairs that makes it not reasonably practicable to carry on its activities and affairs with [the Oxarangos] as general partners.

Idaho Code section 30-24-603(5) provides that a person is expelled as a general partner of a limited partnership when

(5) On application by the limited partnership or a partner in a direct action under section 30-24-901, Idaho Code, the person is expelled as a general partner by judicial order because the person:

(A) Has engaged or is engaging in wrongful conduct that has affected adversely and materially, or will affect adversely and materially, the partnership's activities and affairs;

14

(B) Has committed willfully or persistently, or is committing willfully and persistently, a material breach of the partnership agreement or a duty or obligation under section 30-24-409, Idaho Code; or

(C) Has engaged or is engaging in conduct relating to the partnership's activities and affairs that makes it not reasonably practicable to carry on the activities and affairs of the limited partnership with the person as a general partner[.]

I.C. § 30-24-603(5).

As indicated by the above text, expulsion of a general partner can be judicially ordered "[o]n application by the limited partnership" or on "application by . . . a partner in a direct action under section 30-24-901[.]" *Id.* The Family Limited Partnership is not a plaintiff in this case and did not seek an order expelling the Oxarangos as general partners. Hyde/Reaney instituted the suit as individuals and as limited partners of the Family Limited Partnership, but the partnership itself did not bring the action, or make an "application" as section 30-24-603(5) contemplates. Thus, for expulsion under section 30-24-603(5) to be judicially ordered in this case, it must be brought by "a partner in a direct action" under Idaho Code section 30-24-901.

Idaho Code section 30-24-901 provides:

(a)   Subject to subsection (b) of this section, a partner may maintain a direct action against another partner or the limited partnership, with or without an accounting as to the partnership's activities and affairs, to enforce the partner's rights and protect the partner's interests, including rights and interests under the partnership agreement or this act or arising independently of the partnership relationship.

(b)   A partner maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership.

(c)   A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.

I.C. § 30-24-901.

The Official Comment to Idaho Code section 30-24-603(5) on expulsion of general partners is also helpful. It explains that, like a direct action for other relief, section 30-24-901 limits a direct action for expulsion:

The reference to "a direct action under [section 30-24-901]" reflects the "separate entity" nature of a limited partnership. Section [30-24-901] limits a partner's standing to bring a direct action to circumstances in which the partner can "plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership."

. . . .

15

> EXAMPLE: General Partner Alpha breaches the limited partnership agreement . . . through grossly negligent conduct which harms the profitability of the limited partnership. Depending on the terms of the limited partnership agreement and the allocation of power among the partners, General Partner Beta may be able to cause the limited partnership to invoke Paragraph 5 and seek General Partner Alpha's expulsion. *But General Partner Beta has no standing individually to seek General Partner Alpha's expulsion, except through a derivative claim.*[1]

I.C. § 30-24-603(5) cmt. paragraph (5) (emphasis added).

For the reasons previously discussed, the general allegations in the complaint, as well as the specific allegations in paragraphs 55 through 58, do not outline "an actual or threatened injury" to Hyde/Reaney "that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." I.C. § 30-24-901(b). As Hyde/Reaney lack standing to bring a direct action against the Oxarangos, as explained above, they also lack standing to pursue a judicial expulsion claim. Hyde/Reaney did not allege a distinct, palpable injury to themselves, other than their personal inheritance expectations that are not legally cognizable. Accordingly, we decline to reach the merits of their expulsion claim under Idaho Code section 30-24-603(5).

## C. Attorney Fees

The Oxarangos requested attorney fees and costs pursuant to Idaho Appellate Rules 40 and 41, and Idaho Code section 12-121, asserting that Hyde/Reaney pursued this appeal frivolously, unreasonably and without foundation. Hyde/Reaney argue that this appeal is not frivolous as they have advanced several legitimate and fairly debatable issues before this Court, such that an award under Idaho Code section 12-121 would be inappropriate.

Attorney fees may be awarded to a prevailing party under Idaho Code section 12-121 if the proceeding was brought, pursued, or defended frivolously, unreasonably or without foundation. I.C. § 12-121. "[W]hen a party pursues an action which contains fairly debatable issues, the action is not considered to be frivolous and without foundation." *Garner v. Povey*, 151 Idaho 462, 468, 259 P.3d 608, 614 (2011) (quoting *C & G, Inc. v. Rule*, 135 Idaho 763, 769, 25 P.3d 76, 82 (2001)). "An award of fees under section 12-121 is within this Court's discretion." *Aizpitarte v. Minear*, 170 Idaho 186, 203, 508 P.3d 1260, 1277 (2022) (citing *Owen v. Smith*, 168 Idaho 633, 648, 485

---

[1] The last phrase quoted, "except through a derivative claim," is seemingly at odds with Idaho Code section 30-24-603(5), which limits the parties who can bring claims for general partner expulsion to "the limited partnership" or "a partner in a direct action under section 30-24-901." I.C. § 30-24-603(5). But even if a partner can bring a derivative action for expulsion, Hyde/Reaney did not make demand on the Family Limited Partnership to pursue the action, nor did they adequately support their claim that such a demand would be futile, as explained in Section A.1.

P.3d 129, 144 (2021)). "Apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Litster v. Litster Frost Inj. Laws. PLLC*, 174 Idaho 860, 882, 560 P.3d 1007, 1029 (2024) (quoting *Millard v. Talburt*, 173 Idaho 533, 550, 544 P.3d 748, 765 (2024)).

We conclude that, as the prevailing party, the Oxarangos are entitled to an award of costs and attorney fees for their arguments concerning the pleading requirements for some of their causes of action and a "family member" fiduciary duty. Hyde/Reaney's arguments disregarded the longstanding tenet of entity law that derivative and direct actions brought by a shareholder, or in this case, a limited partner, must follow pleading requirements. Allegations regarding demands on the entity to pursue claims of the entity, or why such a demand would be futile, *must* be pleaded with particularity. I.C. § 30-24-904. As explained above, Hyde/Reaney failed to comply with this pleading requirement, and their appeal merely invites this Court to second-guess the district court's decision. Moreover, Hyde/Reaney's arguments concerning the "special" family member fiduciary duty (which was raised for the first time on appeal) and the alleged injury to their inheritance rights lacked citation to legal authority that was on point. As a result, we conclude that these aspects of the appeal were frivolous, unreasonable, and without foundation, and, therefore, an award of attorney fees is granted to Oxarangos under Idaho Code section 12-121 for the time spent responding to those arguments.

However, while we did not reach the merits of Hyde/Reaney's challenge to the district court's statute of limitations ruling or their argument concerning the application of Idaho Rule of Civil Procedure 78 to derivative claims brought within a limited partnership, we do not conclude that these aspects of the appeal were frivolous, unreasonable, or without foundation. Therefore, we decline to award Oxarangos attorney fees for the time spent responding to those arguments.

### IV.    CONCLUSION

For the above stated reasons, the district court's decision dismissing Hyde/Reaney's breach of fiduciary duty claims and their expulsion claim is affirmed. The Oxarangos are awarded costs and attorney fees on appeal consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and ZAHN CONCUR.